IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SAVERI LAW FIRM, INC., et al., | No. C -14-01740(EDL) |
| Plaintiffs, | **ORDER ON MOTION TO DISMISS** |
| v. | |
| MICHAEL CRIDEN P.A., | |
| Defendant. | |

Defendant moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction or, alternatively, to transfer venue to the United States District Court for the Southern District of Florida. For the reasons set forth below, Defendant's motion is DENIED.

**I. Procedural History and Relevant Factual Background**

Plaintiffs' complaint arises out of a dispute over referral fees related to In re Titanium Dioxide Antitrust Litigation, No. 10-CV-00318 (D. Md.). In February 2010, Defendant allegedly entered into a referral agreement with non-party Lieff, Cabraser, Heimann & Bernstein LLP ("Lieff Cabraser") via e-mail whereby Defendant referred a class plaintiff to Lieff Cabraser for In re Titanium in exchange for a percentage of any fees awarded to Lieff Cabraser in that case. (See Saveri Decl. Ex. 1.) Plaintiff Joseph R. Saveri ("Plaintiff Saveri") was a partner at Lieff Cabraser when the alleged agreement was entered into; however, Plaintiff Saveri subsequently left Lieff Cabraser and now practices at Plaintiff Joseph Saveri Law Firm, Inc. ("Plaintiff Saveri Law Firm"). After Plaintiff Saveri left Lieff Cabraser, Plaintiff Saveri applied to be, and was appointed as, co-lead plaintiffs' counsel in In re Titanium. (Cmplt. ¶ 12.) In the Fall of 2013, after approval of a

settlement in In re Titanium, attorneys fees of $54.5 million were awarded and several law firms, including Plaintiff Saveri Law Firm and Defendant, were allocated a portion of those fees. (Cmplt. ¶¶ 12, 14.)

Plaintiffs allege that on or about February 28, 2014, they received an arbitration demand from the American Arbitration Association ("AAA") filed by Defendant that seeks $1.2 million dollars in referral fees associated with In re Titanium. (Cmplt. ¶ 15.) Defendant claims that Plaintiffs are bound by an arbitration clause in the above-mentioned referral agreement.

Plaintiffs are citizens of California and Defendant is a citizen of Florida. (Cmplt. ¶¶ 1-3.) After the AAA ruled that venue for the arbitration should be in Miami, Plaintiffs filed this action, to enjoin Defendant from proceeding with the arbitration and obtain a declaration that Plaintiffs are not obligated to pay a referral fee to Defendant. On May 13, 2014, Defendant filed this motion to dismiss for lack of personal jurisdiction.

**A. Plaintiffs' Allegations Regarding Defendant's Contacts with California**

In addition to entering into the e-mail referral agreement with Lieff Cabraser, a California law firm, referenced above, Plaintiffs allege that Defendant had several other contacts with California that support jurisdiction. First, Plaintiffs allege that Defendant has previously contracted for referral fees in four other cases in California. (Opp. at 5, 13.) As part of this referral business, Plaintiffs allege that Defendant has appeared pro hac vice in over a dozen matters in California. (Id. at 5, 13-14.)

Second, Plaintiffs allege that any conduct supporting an alleged agreement between Plaintiffs and Defendant would involve "substantial forum-based activity" because the bulk of the work Plaintiffs did on In re Titanium occurred in California. (Id. at 5, 15-16.)

Third, after Plaintiff Saveri was appointed co-lead counsel, Plaintiffs allege that Defendant e-mailed Plaintiffs on August 8, 2012, to confirm that Plaintiffs would pay Defendant a referral fee. (Id. at 6.) Plaintiffs never responded to that e-mail. (Id.) Plaintiffs allege that on October 23, 2013, Defendant again e-mailed Plaintiffs to confirm the referral fee. (Id. at 6-7.) Plaintiffs again did not

respond. (Id. at 7.)

## II. Discussion

### A. Standard on Motion to Dismiss

Defendant moves to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff need only make a prima facie showing of jurisdictional facts. Id. The Court must take uncontroverted allegations in the complaint as true, id., but may not assume the truth of allegations that are contradicted by affidavit. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) ("If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit."). Moreover, the Court need not assume the truth of conclusory allegations. Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) (Chesney, J.). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800. However, plaintiff's evidence must be admissible. Nicosia, 72 F. Supp. 2d at 1097.

### B. Specific Jurisdiction

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analyses under California law and federal law are the same. Schwarzenegger, 374 F.3d at 801. "For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant

3

forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may either be general or specific. Here, Plaintiff only asserts specific jurisdiction. For specific jurisdiction to exist over a non-resident defendant: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby involving the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." Schwarzenegger, 374 F.3d at 802.

**1. Application of Purposeful Availment or Purposeful Direction**

"Purposeful availment" and "purposeful direction" are "two distinct concepts." Schwarzenegger, 374 F.3d at 802. A "purposeful availment analysis is used in contract cases and consists of evidence of defendant's actions in the forum, such as executing or performing a contract there." Id. In tort cases, courts use a "purposeful direction" analysis that "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as distribution in the forum state of goods originating elsewhere." Id. at 803. Defendant argues that a "purposeful availment" analysis applies here because the dispute arises out of an alleged contract. (Mot. at 9.) In contrast, Plaintiffs contend that a "purposeful direction" analysis applies because the complaint seeks a preliminary injunction from an arbitration proceeding and does not include a cause of action sounding in contract. (Opp. at 11-12.)

In their jurisdictional analysis, the Parties address both this case and the Florida arbitration proceeding initiated by Defendant. Plaintiffs here seek to enjoin the Florida arbitration proceeding and obtain a declaration that Plaintiffs are not obligated by the alleged contract to pay Defendant a referral fee, primarily because they are not parties to that agreement. Both of these claims sound in equity. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982) ("It goes without saying that

an injunction is an equitable remedy."); Samuels v. Mackel, 401 U.S. 66, 70 (1971) (noting that "a suit for declaratory judgment [is] . . . 'essentially an equitable cause of action'" (quoting Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300 (1943))). In the Florida arbitration proceeding, Defendant brings claims for implied in fact contract , unjust enrichment or implied in law contract, and money had and received. (Bunzel Decl. Ex. B at 15-16.) While Defendant's implied in fact contract claim sounds in contract, Defendant's other claims sound in equity. See Parino v. BidRack, Inc., 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (Alsup, J.) ("In California, unjust enrichment is 'not a cause of action ... or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.' Thus, a claim for unjust enrichment/restitution is properly pled as a claim for a contract implied-in-law." (quoting McBride v. Boughton, 123 Cal. App. 4th 379, 387 (Cal. Ct. App. 2004))); Walter v. Hughes Commc'ns, Inc., 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010) (Conti, J.) (noting that under California law, "[t]he foundation of an action for conversion on a money had and received count is the unjust enrichment of the wrongdoer." (quoting Bastanchury v. Times-Mirror Co., 68 Cal. App. 2d 217, 236 (Cal. Ct. App. 1945))); Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding' . . . . By contrast, an agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" (quoting Baltimore & O.R. Co. v. United States, 261 U.S. 592, 597 (1923))).

Defendant, citing Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857 (9th Cir. 2003), argues that because Plaintiffs are "seeking to enjoin [Defendant] from pursuing its claims for a referral fee in an AAA arbitration, the jurisdictional inquiry should focus on [the claims in the arbitration proceeding], since they define the subject matter of this action." (Reply at 3-4.) However, Mattel does not support the proposition that the arbitration is relevant to determining which jurisdictional analysis to apply in this case; rather, that case held that in *applying* a "purposeful availment" analysis to the facts at issue in that case, a prior related lawsuit was relevant in determining whether specific jurisdiction existed. Mattel, 354 F.3d at 864. It did not hold that a

5

related action was relevant in determining *whether to apply* a "purposeful availment" analysis. Indeed, in every case cited by the parties, the analysis of whether the action sounded in contract or tort focused on the complaint before the Court, not the facts of some other action.

Although Plaintiffs exclusively seeks equitable relief, their complaint does bear some relationship to a contract because they seek both to enjoin an arbitration proceeding related to a contract and a declaration that they "have not agreed nor are obligated to pay any referral fee" to Defendant. (Cmplt. at 8.) Defendant thus also argues based on Evans Analytical Group v. Green Plan Farms, LLC, No. 12-CV-5023 (LHK), 2013 WL 3963822 (N.D. Cal. July 29, 2013), that a "purposeful availment" analysis applies. Evans Analytical involved claims for rescission of a lease and a declaratory judgment that the lease is cancelled, both equitable remedies. Id. at *5. In that case, the Court applied a "purposeful availment" analysis reasoning that all of the plaintiff's claims "ar[o]se out of [plaintiff's] contractual relationship with the defendants." Id. at *6 (quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)). However, unlike in Evans Analytical where there was no dispute that the contract at issue existed between the parties, here there is such a dispute. It is undisputed that Plaintiffs are not express signatories to the contract between Defendant and Lieff Cabraser. Indeed, Defendant's claims in the underlying Florida arbitration proceeding are based on implied contract only. Unlike Evans Analytical, Plaintiffs claims here are not centered on cancelling an existing express contract; instead, Plaintiffs seek to enjoin an arbitration proceeding and obtain a declaration that they are not bound by an alleged implied contract. Thus, Plaintiffs' claims do not *arise* out of a contractual relationship as they did in Evans Analytical; rather, Plaintiffs seek equitable relief declaring that such a relationship never existed.[1]

---

[1] The other cases cited by Defendant are also unavailing: Boschetto v. Hansing, 439 F.3d 1011, 1018 (9th Cir. 2008) involved an eBay sale gone awry and causes of action for breach of contract, misrepresentation, fraud, and violation of a consumer protection law. The court analyzed the case as sounding "primarily in contract" and applied a "purposeful availment" analysis. Id. at 1016. Similarly, in Sher, 911 F.2d at 1362, which involved causes of action sounding in both tort and contract, the court applied "purposeful availment" because "[a]lthough some of [plaintiff's] claims sound in tort, all arise out of [plaintiff's] contractual relationship with the defendants." See also Panthera Railcar LLC v. Kasgro Rail Corp., No. 12-CV-6458 (SI), 2013 WL 1996318, at *3-4 (N.D. Cal. May 13, 2013) (citing Boschetto and Sher in a case involving both tort and contract claims and reasoning that because the tort claims arise out of the contractual relationship, a "purposeful availment" analysis applies). None of these cases involved the situation at issue here – where Plaintiffs contest being a party to the alleged contract. Furthermore, other cases involving claims sounding in both tort and contract applied a

6

United States District Court
For the Northern District of California

In contrast, Plaintiffs argue that a "purposeful direction" analysis applies based on Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006). There, the defendants brought an action in France to compel the plaintiff, an internet search engine, to remove links to webpages containing Nazi-related content from its website. Id. at 1202-03. In response, the plaintiff sought a declaratory judgement that certain orders against it by the French court were not enforceable in the United States. The Court applied a "purposeful direction" analysis, noting that the case "is neither a tort nor a contract case" because the plaintiff argued that "based on the First Amendment . . . the French court's interim orders are unenforceable." Id. at 1206. Here, as in Yahoo!, Plaintiffs are seeking relief from an out-of-state legal proceeding brought by out-of-state residents. The effects of that out-of-state proceeding will certainly be felt in California because Plaintiffs reside and conduct business there. See Yahoo!, 433 F.3d at 1206.

Although, unlike in Yahoo!, Plaintiffs' claims seeking equitable relief do bear some relationship to an alleged contract, Plaintiffs specifically contest that any referral agreement existed between the Parties and Defendants have only alleged theories of liability in the underlying Florida arbitration proceeding based on implied contract. Defendant has not cited – and the Court is unaware of – any precedent which suggests applying a "purposeful availment" analysis to all cases even tangentially related to a contract. Indeed, as mentioned above, some courts adjudicating jurisdiction in mixed tort and contract cases have applied a "purposeful direction" analysis. See TRC Tire Sales, 2008 WL 3200727, at *2; Goldberg, 482 F. Supp. 2d at 1144. Furthermore, Plaintiffs frame this action as one sounding more in tort than in contract. According to Plaintiffs, they allege that Defendant's "actions in seeking to hail plaintiffs into the AAA forum are causing plaintiffs 'legal fees and costs' which plaintiffs 'will not recover' as well as 'time and resources in arbitration that are not compensable by any monetary award'" (Opp. at 11 (quoting Cmpl. ¶ 20)). See Dial Up Services, Inc. v. Oregon, No. 07-423, 2007 WL 4200756, at *4 (D. Ariz. Nov. 27, 2007)

---

"purposeful direction" analysis. See TRC Tire Sales, LLC v. Extreme Tire & Service, Inc., 2008 WL 3200727, at *2 (E.D. Wash. Aug. 6, 2008) (applying a "purposeful direction" analysis in a case involving both tort and contract claims); Goldberg v. Cameron, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007) (Whyte, J.) (applying a "purposeful direction" analysis in a case involving causes of action for the tort of copyright infringement, breach of an implied contract, and various equitable relief). Furthermore, none of these cases involved a complaint that exclusively seeks equitable relief.

7

(applying the "purposeful direction" analysis to a case involving claims under the All Writs Act, the Anti Injunction Act and the Declaratory Judgment Act and reasoning that "[a]lthough these claims are not traditional tort claims, [they] are more akin to tort claims than contract claims"). While a close question, the Court concludes that, in light of Yahoo!, a "purposeful direction" analysis applies in this case.

A "purposeful direction" analysis requires a showing that Defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000)). Defendant does not specifically dispute that Plaintiffs have made an adequate showing under a "purposeful direction" analysis.

With regard to the first two elements, the Yahoo! court found that sending a cease and desist letter to California, serving process of the French action on Defendant in California, and most importantly, obtaining orders from the French court were, together, intentional acts sufficiently directed at the forum state for the purposes of jurisdiction. 433 F.3d at 1208-09. Similarly, in this case, Defendant sent an e-mail to Lieff Cabraser in California to create the contract, two e-mails to Defendant Saveri Law Firm attempting to confirm the alleged referral arrangement, and, most significantly, initiated an arbitration proceeding against Plaintiffs, both California residents, in an effort to enforce the alleged contract. These are sufficient acts to satisfy the first two elements of "purposeful direction." See Yahoo!, 433 F.3d at 1209 (reasoning that the French court action was an intentional act aimed at California because the impact of "any financial penalty [that] might be imposed . . . would be felt by [plaintiff] at its corporate headquarters in California.").

With regard to the third element, there is no dispute that the harm alleged in the complaint would be suffered by Plaintiffs in California and that Defendant knows it would be. Defendant clearly is aware that Plaintiffs are California residents. Any financial penalties stemming from the arbitration proceeding would necessarily be felt by Plaintiffs in California. Furthermore, the inconvenience and expense of having to defend an arbitration proceeding in Florida is being felt by Plaintiffs, both California residents.

8

Thus, Plaintiffs have sufficiently alleged that Defendant has purposefully directed its activities at California.

**2. Relationship of Plaintiffs' Claims to Forum Activities**

The second prong of the specific jurisdiction test is referred to as a "but for" test. Learjet, Inc. v. Oneok, Inc., 715 F.3d 716, 742 (9th Cir. 2013). "Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'" Id. (quoting Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 894 (9th Cir. 1996)). Defendant does not specifically address this prong. It is undisputed that Defendant entered into an alleged e-mail contract with Lieff Cabraser in California and twice reached out to Plaintiffs in California to confirm that they intended to compensate Defendant pursuant to that agreement. Defendant subsequently initiated an arbitration proceeding against Plaintiffs, California residents. Plaintiffs' claims stem directly from these activities and 'but for' these activities, there would be no complaint in this case. Consequently, there is a sufficient nexus between Defendant's contacts with California and this lawsuit.

**3. Reasonableness of Exercising Personal Jurisdiction**

The Court considers a number of factors in assessing whether an exercise of personal jurisdiction is reasonable including: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting Dole Food Co. v. Watts, 303 F.3d 1111 (9th Cir. 2002)). The burden is on Defendant to demonstrate a "compelling case" of unreasonableness. Burger King, 471 U.S. at 477.

Here, Defendant mainly addresses the first factor – whether it has injected itself into the forum. The sole case Defendant cites, FDIC v. British-American Insurance, 828 F.2d 1439 (9th Cir. 1987), is unpersuasive. In that case, which involved a foreign defendant, the Ninth Circuit concluded that because the subject of the contract at issue "was in Fiji, the governing law was Fiji's, and the defendant's only significant performance in California was picking up a check for an already completed and executed contract," specific jurisdiction over the defendant would be unreasonable. Id. at 1442-44. Here, in contrast, Defendant engaged in a continuing course of representation of a client with Lieff Cabraser, a California law firm. Defendant sent e-mails directly to California to establish a contract with Lieff Cabraser and to confirm the referral arrangement with Plaintiffs, also in California. Defendant has thus injected itself into California much more than the defendant in British-American Insurance.

Defendant also argues that Florida would be a more appropriate forum because it has a stronger interest than California and is more convenient for Defendants. However, California's interest in this dispute is no less than Florida's because Plaintiffs allege that they are burdened by the Florida arbitration proceeding. Similarly, while this case could have been brought in Florida, California is much more convenient for Plaintiffs and Defendant cites no evidence that litigating this case in California is so burdensome as to render jurisdiction unreasonable. See also CollegeSource, 653 F.3d 1066, 1080 ("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." (quoting Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007) (brackets in original))). Consequently, Defendant has failed to meet its burden of proving unreasonableness.

**C. Transfer of Venue to the United States District Court for the Southern District of Florida**

Defendant argues that if there is specific jurisdiction in this case, venue should be transferred to the United States District Court for the Southern District of Florida pursuant to 28

10

1 U.S.C. § 1404(a). Under that provision, "[f]or the convenience of parties and witnesses, in the
2 interest of justice, a district court may transfer any civil action to any other district or division where
3 it might have been brought." Determining whether an action should be transferred pursuant to §
4 1404(a) is a two-step process. The transferor court must first determine whether the action "might
5 have been brought" in the transferee court, and then the court must make an "individualized,
6 case-by-case consideration of convenience and fairness." Inherent.com v. Martindale-Hubbell, 420
7 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (Patel, J) (citing Hatch v. Reliance Ins. Co., 758 F.2d 409,
8 414 (9th Cir. 1985) and Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir. 2000)). The burden
9 is on the defendant to show that transfer is appropriate. See Commodity Futures Trading Comm'n v.
10 Savage, 611 F.2d 270, 279 (9th Cir.1979).

11 Here, there is no dispute that the first prong of the § 1404(a) analysis is met. This action
12 might have been brought under 28 U.S.C. § 1391(b)(1) in the United States District Court for
13 Southern District of Florida because Defendant resides there. See 28 U.S.C. § 1391(b) ("A civil
14 action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only
15 in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . . .
16 ").

17 As to the second prong of the § 1404(a) analysis, the plain language of the statute requires
18 the Court to consider at least three factors in deciding whether to transfer a claim to another court:
19 (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.
20 Ninth Circuit precedent requires the Court to heavily weigh Plaintiffs' choice of forum. See SIPC v.
21 Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). In determining the convenience of the parties and
22 witnesses and the interests of justice, a Court may consider a number of factors including: "(1) the
23 plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses;
24 (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of
25 consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court
26 congestion and time of trial in each forum." Gerin v. Aegon USA, Inc., No. 06-CIV-5407 (SBA),
27 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007) (citing Jones, 211 F.3d at 498-99). In the usual
28 case, unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, "the

11

plaintiff's choice of forum should rarely be disturbed." Vigman, 764 F.2d at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

Here, the balance of factors weighs against transfer. First, Defendant argues unpersuasively that Plaintiffs' choice of this forum should be given no weight because California lacks a significant connection to this dispute and because Plaintiffs have allegedly engaged in forum shopping. Although Defendant is correct that several of the events relevant to this dispute took place outside of California, such as the litigation of In re Titanium in Maryland, California has a significant connection because Defendant entered into a referral agreement with a California law firm, Lieff Cabraser; that California firm represented Defendant's client in In re Titanium; the departure of Plaintiff Saveri from Lieff Cabraser occurred in California; and Plaintiffs were co-lead counsel in In re Titanium from California. Furthermore, there is no evidence that Plaintiffs have engaged in forum shopping. Defendant alleges that forum shopping must have occurred because Plaintiffs waited until after the AAA issued a venue decision before filing this action; however, Defendant cites no authority suggesting that waiting for an arbitration decision constitutes forum shopping. Indeed, had Plaintiffs won their motion before the AAA, there would have been little reason for them to bring this action at all. Consequently, this factor weighs against transfer. Second, by Defendant's account, there are two potential witnesses in San Francisco and one witness each in Miami, New York, Minneapolis and Philadelphia. (Mot. at 17-18.) However, according to Plaintiffs, there are eleven California-based witnesses, including five from Plaintiff Saveri Law Firm. (Opp. at 22.) Furthermore, Plaintiffs are in San Francisco and Defendant is in Miami, so Miami is not significantly more convenient than San Francisco. Consequently, this factor weighs against transfer. Third, Defendant concedes that the ease of access to evidence, familiarity of the forum with applicable law, and feasibility of consolidation of claims factors are neutral. As to local interest in the controversy, although Defendant argues that Florida has an interest, Defendant provides no convincing reason why California's interest is any less than Florida's. Consequently, this factor is neutral. Finally, Defendant notes, and Plaintiffs do not dispute, that the United States District Court for the Southern District of Florida is less congested than this District, so this factor

12

weighs in favor of transfer. Weighing all these factors together, the Court concludes that Defendant has failed to present a compelling case for transfer and has not overcome the strong deference afforded to Plaintiff's choice of forum.

**III. CONCLUSION**

The Court hereby DENIES Defendant's motion to dismiss or, alternatively, to transfer venue to the United States District Court for the Southern District of Florida.

**IT IS SO ORDERED.**

Dated: July 23, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge