1   ROBERT T. SULLWOLD (SBN 88139)
    JAMES A. HUGHES (SBN 88380)
2   SULLWOLD & HUGHES
    1999 Harrison Street, 18th Floor
3   Oakland, CA  94612-3520
    Telephone: 510-496-4616
4   Facsimile:  415-762-5338

5   CURTIS JAY MASE (Florida Bar No. 478083)
    CAMERON EUBANKS (Florida Bar No. 85865)
6   MASE LARA
    2601 Bayshore Drive, #800
7   Miami, FL  33133
    Telephone: 305-377-3770
8   Facsimile: 305-377-0080

9   Attorneys for Defendant/Counter-Plaintiff
    MICHAEL E. CRIDEN, P.A. dba
10  CRIDEN & LOVE, P.A.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15

16  JOSEPH SAVERI LAW FIRM, INC., a California          Case No.: C 14-01740 EDL
    corporation, and JOSEPH R. SAVERI,
17                                                      **ANSWER AND COUNTERCLAIM OF**
                              Plaintiffs,               **MICHAEL E. CRIDEN, P.A., dba CRIDEN &**
18                                                      **LOVE, P.A.**
              v.
19                                                      **DEMAND FOR JURY TRIAL**
    MICHAEL E. CRIDEN, P.A. dba
20  CRIDEN & LOVE, P.A., a Florida corporation,

21                            Defendant.

22  MICHAEL E. CRIDEN, P.A. dba
    CRIDEN & LOVE, P.A., a Florida corporation,
23
                              Counterclaimant,
24
              v.
25
    JOSEPH SAVERI LAW FIRM, INC., a California
26  corporation, and JOSEPH R. SAVERI,

27                        Counter-Defendants.

28

Defendant/Counterclaimant Michael E. Criden, P.A. dba Criden & Love, P.A. ("Criden & Love") hereby files its Answer and Counterclaim.

<u>**ANSWER**</u>

<u>**The Parties**</u>

1.      Criden & Love admits that Joseph Saveri Law Firm, Inc. ("Saveri Law Firm") purports to be a California corporation with its principal place of business in San Francisco, but Criden & Love is without knowledge as to these allegations, and therefore, denies same.

2.      Criden & Love admits that Joseph R. Saveri ("Saveri") purports to be a California citizen and resident of San Francisco, but Criden & Love is without knowledge as to these allegations, and therefore, denies same.  Criden & Love admits that Saveri engages in the practice of law.

3.      Criden & Love admits that it is a law firm with its principal place of business in South Miami, Florida.

<u>**Jurisdiction and Venue**</u>

4.      Paragraph 4 contains a jurisdictional characterization of this lawsuit.  To the extent that these allegations can be considered averments of fact, Criden & Love denies same.   Criden & Love admits that it sent an e-mail to Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") regarding a referral fee.  Criden & Love further admits that it has appeared as counsel of record in several actions in this District.

5.      Paragraph 5 contains a jurisdictional characterization of this lawsuit.  To the extent that these allegations can be considered averments of fact, Criden & Love denies same.

<u>**Facts Giving Rise to the Claim**</u>

6.      Criden & Love admits that Saveri purported to be a partner with Lieff Cabraser who specialized in representing plaintiffs in class actions arising under federal and state antitrust laws, but Criden & Love is without knowledge as to these allegations, and therefore, denies same.

7.      Criden & Love admits that on February 8, 2010, it sent Lieff Cabraser an e-mail proposal for a referral in *In re Titanium Antitrust Litigation*, No 10-318 (pending in the United States District Court for the District of Maryland ("TIO2 Action")), and that on the same day, Lieff Cabraser sent an e-

1

mail back to Criden & Love accepting the referral.  Criden and Love denies the remaining allegation, and further states that the e-mails speak for themselves.

8.    Criden & Love admits that neither Plaintiff actually signed any agreement with Criden & Love in connection with the TIO2 Action.  As for the remaining allegations, Criden & Love denies same.

9.    Criden & Love admits that on or about February 9, 2010, Haley Paint Company filed a complaint in the United States District Court for the District of Maryland, alleging a conspiracy to fix prices of titanium dioxide in violation of the antitrust laws.

10.    Criden & Love admits that on or about February 12, 2010, Isaac Industries, Inc. filed a complaint in the United States District Court for the District of Maryland, alleging a conspiracy to fix prices of titanium dioxide in violation of the antitrust laws.  Criden & Love further admits that Saveri was listed on the complaint as counsel for Isaac Industries, Inc.  Criden & Love further admits that Lieff Cabraser was appointed a co-lead counsel in the TIO2 Action and Saveri functioned as the senior lawyer at Lieff Cabraser regarding the TIO2 Action.  Criden & Love denies the remaining allegations.

11.    Criden & Love is without knowledge as to when Saveri withdrew as a partner of Lieff Cabraser, and therefore denies same.  Criden & Love admits that on July 29, 2011, the Court in the TIO2 Action entered an Order allowing East Coast Colorants LLC d/b/a Breen Color Concentrates ("Breen") to be added as a plaintiff in the TIO2 Action.  Criden & Love further admits that on June 1, 2012, Saveri filed a Notice of Appearance for Breen, and that on August 7, 2012, the Saveri Law Firm was appointed by the Court in the TIO2 Action as the third Co-Lead Class Counsel.  As to the remaining allegations, Criden & Love is without knowledge, and therefore denies same.

12.    Criden & Love admits that the TIO2 Action settled for $163.5 million and that the Court awarded Class Counsel $54.5 million in attorneys' fees, and that a Final Judgment has been entered.  As to the remaining allegations, Criden & Love is without knowledge, and therefore denies same.

13.    Criden & Love admits that it received approximately $1.7 million in referral fees and approximately $1 million in fees related to work performed by Criden & Love related to the TIO2 Action.  As to the remaining allegations, Criden & Love is without knowledge, and therefore denies same.

2

14.     Criden & Love admits that, upon information and belief, Plaintiffs have received approximately $10 million in fees related to the legal work they performed after June 1, 2012 in the TIO2 Action.

15.     Criden & Love admits that it filed a Demand for Arbitration against Plaintiffs and that Criden & Love sought referral fees from Plaintiffs.  Criden & Love also admits that the Arbitration proceeding has now been dismissed pursuant to a stipulation between the Parties.

16.     Criden & Love admits that the Arbitration proceeding has now been dismissed pursuant to a stipulation between the Parties.  Criden & Love further admits that Plaintiffs are not signatories to the referral agreement between Criden & Love and Lieff Cabraser.   Criden & Love denies the remaining allegations.

17.     Criden & Love admits that the Arbitration proceeding has now been dismissed pursuant to a stipulation between the Parties.  Criden & Love admits that Plaintiffs filed objections to the Arbitration and Criden & Love responded to those objections.  Criden & Love denies the remaining allegations.

18.     Criden & Love admits the allegations in paragraph 18.

19.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 19 are now moot and/or withdrawn, and accordingly, no response is required.

20.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 20 are now moot and/or withdrawn, and accordingly, no response is required.

21.     Criden & Love admits that Plaintiffs are seeking declaratory relief, but deny that Plaintiffs are entitled to a declaration that they do not owe Criden & Love a referral fee regarding the TIO2 Action.

## First Cause of Action

### (Preliminary Injunction Enjoining Arbitration)

22.     To the extent that Paragraph 22 includes allegations from previous paragraphs, Criden & Love incorporates its responses to those paragraphs herein.  Criden & Love further admits that the First Cause of Action is now moot and/or withdrawn, and accordingly, no response is required to any of the allegations related to this First Cause of Action.

3

23.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 23 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love admits that Plaintiffs are not signatories to the referral agreement with Lieff Cabraser, and denies the remaining allegations.

24.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 24 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love admits that Plaintiffs are not signatories to the referral agreement with Lieff Cabraser, and is without knowledge regarding the remaining allegations, and therefore denies same.

25.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 25 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

26.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 26 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

27.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 27 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

28.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 28 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

29.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 29 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

30.     Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 30 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

///

4

## Second Cause of Action

### (Declaratory Relief)

31.    To the extent that Paragraph 31 includes allegations from previous paragraphs, Criden & Love incorporates its responses to those Paragraphs herein.

32.    Criden & Love admits the allegations in paragraph 32.

33.    Criden & Love admits that Plaintiffs' Complaint includes allegations that contend that Criden & Love is not entitled to any referral fee because: (1) Plaintiffs are not bound by any referral agreement; and (2) Plaintiffs filed a Notice of Appearance for Breen, a company not referred to Plaintiffs by Criden & Love.  Criden & Love denies that Plaintiffs do not owe Criden & Love a referral fee.

34.    Criden & Love admits that California lawyers must comply with California's Rules of Professional Conduct, including Rule 2–200.  Criden & Love further admits that Florida lawyers must comply with Florida's Rules of Professional Conduct, including Rule 4-1.5(g).  Criden & Love further states that the Rules speak for themselves.   Criden & Love denies that its referral agreement with Lieff Cabraser fails to comply with either rule.  Criden & Love denies the remaining allegations.

35.    Criden & Love admits that the Arbitration proceeding has now been dismissed so that the allegations in Paragraph 35 are now moot and/or withdrawn, and accordingly, no response is required. To the extent that a response is necessary, Criden & Love denies the allegations.

36.    Criden & Love denies the allegations in Paragraph 36.

## AFFIRMATIVE DEFENSES[2]

### First Affirmative Defense

#### (Failure to State a Claim)

Plaintiffs have failed to state a claim upon which relief can be granted because, given Criden & Love's Counterclaim, there is no need for a declaration of rights.

///

---

[2] As Plaintiffs' First Cause of Action is now moot or withdrawn, these Affirmative Defenses are applicable to Plaintiffs' "Second Cause of Action" entitled "Declaratory Relief."

**Second Affirmative Defense**

(Estoppel)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because there is no written referral agreement between Plaintiffs) under the doctrine of estoppel.  Plaintiffs prevented Criden & Love from obtaining a written agreement with Plaintiffs.  Plaintiffs' conduct also indicated that a referral agreement was entered into by the parties.

**Third Affirmative Defense**

(Fraud)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because there is no written referral agreement between Plaintiffs) under the doctrine of fraud.  As detailed in Criden & Love's Counterclaim, Plaintiffs deceived Criden & Love into believing that Plaintiffs would pay Criden & Love a referral fee.

**Fourth Affirmative Defense**

(Unjust Enrichment/Restitution)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because there is no written referral agreement between Plaintiffs) under the doctrine of unjust enrichment/restitution.

**Fifth Affirmative Defense**

(Quantum Meruit)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because there is no written referral agreement between Plaintiffs) under the doctrine of quantum meruit.

**Sixth Affirmative Defense**

(Money Had and Received)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because there is no written referral agreement between Plaintiffs) under the doctrine of money had and received.

6

**Seventh Affirmative Defense**

(Fraud)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because of Plaintiffs' representation of Breen) because, as detailed in Criden & Love's Counterclaim, Plaintiffs committed fraud.

**Eighth Affirmative Defense**

(Lack of Causal Relationship and/or Intervening Cause)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because of Plaintiffs' representation of Breen) because Plaintiffs' representation of Breen had no connection to Plaintiffs' recovery in the TIO2 Action.  Instead, the representation of Isaac Industries was the basis for  Plaintiffs' recovery.

**Ninth Affirmative Defense**

(Valid Contract)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Lieff Cabraser fails to comply with Rule 4-1.5(g) of the Florida Bar Rules) because a violation of Florida Bar Rules does not make a referral agreement unenforceable.

**Tenth Affirmative Defense**

(Lack of Causal Relationship)

Plaintiffs are barred from recovery (a request for a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Lieff Cabraser fails to comply with Rule 4-1.5(g) of the Florida Bar Rules or Rule 2-200 of the California Rules of Professional Conduct) because the enforceability *vel non* of the Lieff Cabraser referral agreement under Bar Rules has no connection as to whether the referral agreement between Plaintiffs and Criden & Love is enforceable.

///
///
///

7

**Eleventh Affirmative Defense**

(Valid Contract)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 4-1.5(g) of the Florida Bar Rules) because a violation of Florida Bar Rules does not make a referral agreement unenforceable.

**Twelfth Affirmative Defense**

(Consent)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 2-200 of the California Rules of Professional Conduct) because Isaac Industries has consented in writing after a full disclosure has been made in writing that a division of fees will be made and the terms of the division.

**Thirteenth Affirmative Defense**

(Estoppel)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 2-200 of the California Rules of Professional Conduct) because Plaintiffs prevented Criden & Love from complying with Rule 2-200.

**Fourteenth Affirmative Defense**

(Fraud)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 2-200 of the California Rules of Professional Conduct) because Plaintiffs' fraud, as outlined in Criden & Love's Counterclaim, prevented Criden & Love from complying with Rule 2-200.

///

///

### Fifteenth Affirmative Defense

(Inapplicability of Rule 2-200)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 2-200 of the California Rules of Professional Conduct) because Criden & Love is a Florida law firm.

### Sixteenth Affirmative Defense

(Quantum Meruit)

Plaintiffs are barred from recovery (to the extent that Plaintiffs are requesting a declaration that Plaintiffs are not obligated to pay a referral fee to Criden & Love because the referral agreement between Criden & Love and Plaintiffs fails to comply with Rule 2-200 of the California Rules of Professional Conduct) because Criden & Love is entitled to Quantum Meruit.

### COUNTERCLAIM

Defendant/Counterclaimant Michael E. Criden, P.A. d/b/a Criden & Love, P.A. ("Criden & Love"), pursuant to Fed.R. Civ. P. 13(a), asserts its Counterclaim against Plaintiffs/Counter-Defendants Joseph Saveri Law Firm, Inc. ("Saveri Law Firm") and Joseph R. Saveri ("Saveri"), and alleges:

### Parties

1.      At all relevant times, Criden & Love was a Florida corporation with its principal place of business in South Miami, Florida.  Criden & Love is a law firm specializing in referring clients to other firms in antitrust class actions.

2.      At all relevant times, the Saveri Law Firm was a California corporation with its principal place of business in San Francisco.  The Saveri Law Firm was founded in June 2012 by Joseph Saveri. According to its website, it specializes in "fighting anticompetitive business practices throughout the country," serving as co-lead counsel "in a variety of cases [including one that involved the] price-fixing of titanium dioxide."

3.      Saveri is an individual residing in San Francisco, California.  In 1992, Saveri joined Lieff Cabraser, where he founded and chaired the firm's Antitrust Practice Group.  In June 2012, Saveri formed the Saveri Law Firm.

9

**Jurisdiction**

4.     This Court has supplemental subject matter jurisdiction over this compulsory Counterclaim under 28 U.S.C. § 1367(a).  The Court also has original subject matter jurisdiction over the Counterclaim under 28 U.S.C. § 1332 because the controversy is between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     By filing an action in this Court, Counter-Defendants have waived any objection to personal jurisdiction with respect to any compulsory counterclaim.  In addition, this Court may exercise personal jurisdiction over Counter-Defendants as they are residents of California.  Counter-Defendants also conduct substantial and not isolated business in the State of California and carry on a business in the State of California and this District.  Finally, Counter-Defendants committed a breach of contract and engaged in tortious acts in the State of California and this District.

6.     Venue is proper in this District under 28 U.S.C. § 1391.[3]

**GENERAL ALLEGATIONS**

***Background on Antitrust Referral*s**

7.     Federal antitrust law grants standing *only* to companies that purchase a price-fixed product *directly* from an antitrust defendant.  Although there are several antitrust law firms around the country that have the resources to prosecute an antitrust class action (sufficient number of lawyers, antitrust expertise, funds to pay for expenses, *etc*.), many of these firms do not have clients with standing who are willing to sue the defendant as a class representative.

8.     Moreover, law firms who want to prosecute an antitrust action do not just want to be class counsel in the case.  They want to be appointed Lead Counsel.   As Lead Counsel, a law firm not only decides how the case will be prosecuted, but it is given the authority to dole out work assignments. Getting as much work as possible in an antitrust class action is critical because each law firm's ultimate fee is based on how many hours that firm works on the case.  Not surprisingly, Lead Counsel in antitrust

---

[3]  By alleging jurisdiction and venue for this compulsory counterclaim, Criden & Love is not waiving its right to appeal the Court's Order Denying Motion to Dismiss, or Alternatively, to Transfer [D.E. 32].

class actions routinely keep the lion's share of the work for themselves. And, if the class recovery is large enough, their attorney fee will end up being a large multiple of their hours.

9.     Yet, even the best antitrust law firms cannot obtain a Lead Counsel position (or any role in the case for that matter) without a client.

10.     Certain law firms specialize in referring antitrust clients to these antitrust law firms. Criden & Love is one such law firm. Thus, many plaintiffs antitrust law firms, once they determine that an antitrust violation has occurred, will contact Criden & Love to see whether it has a client that has been damaged by the alleged antitrust violation and is willing to sue its supplier. In exchange for referring the client, the antitrust law firm agrees to pay Criden & Love a referral fee if the plaintiffs prevail in the case.

### *Genesis of the TIO2 Matter*

11.     In July 2009, a Criden & Love client contacted Criden & Love regarding a possible price fixing conspiracy in the titanium dioxide market. The client had been notified of the matter by Gold Bennett Cera & Sidener, LLP ("Gold Bennett"), a California antitrust law firm.

12.     Criden & Love brought the matter to Linda Nussbaum, an attorney in New York, to investigate the allegations. Her analysis revealed it was likely that certain companies had indeed fixed the price of titanium dioxide.

13.     Criden & Love contacted another client, Isaac Industries, Inc., to see whether it directly purchased titanium dioxide from any of the potential defendants. Isaac Industries purchased titanium dioxide directly from one of the defendants and was willing to be a class representative. Isaac Industries, a chemical wholesaler, had been a Criden & Love client in many previous antitrust class actions and was fully aware that Criden & Love referred clients in these types of actions for referral fees.

14.     Nussbaum then contacted Saveri at Lieff Cabraser and Eric Cramer at Berger & Montague, P.C. to see whether either of them was interested in pursuing the case. Both responded that they would be interested, but neither had a client. Nussbaum told them that Criden & Love already had a client who wanted to file the case.

15.     On February 7, 2010, Isaac Industries executed an engagement letter with Criden & Love that stated that Isaac Industries was retaining Criden & Love, Lieff Cabraser and other firms to represent it as a class representative in the titanium dioxide matter.

### *Lieff Cabraser Referral Agreement*

16.     On February 8, 2010, Criden & Love sent Lieff Cabraser an e-mail with the following proposal for a referral agreement:

> Lieff Cabraser Heimann & Bernstein, LLP agrees to pay Criden & Love, P.A. a referral
> fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours
> that it receives in this matter ("Total Fees").  Total Fees does not include any monies
> received for reimbursement of expenses.  Lieff Cabraser agrees to pay the referral fee to
> Criden & Love even if Lieff Cabraser later procures another client in this matter.  If Lieff
> Cabraser receives significantly less than its lodestar in the case, Criden & Love agrees to
> discuss in good faith reasonable accommodation to the amount of the referral fee.

*See* February 8, 2010 E-Mail, attached hereto as Exhibit "A."

17.     That same day, Eric Fastiff of Lieff Cabraser agreed to the Referral Agreement by reply e-mail.  *See* Exhibit A.  At the time Fastiff agreed to the terms above, he worked for Saveri, who was Chair of Lieff Cabraser's Antitrust Practice Group.  As Fastiff's boss, and as Chair of the firm's Antitrust Group, Saveri had to approve the referral agreement before Fastiff could accept the terms of Criden & Love's referral proposal on behalf of Lieff Cabraser.

18.     Saveri is a California lawyer who is subject to the California Rules of Professional Conduct.  Saveri therefore knew about the requirements of Rule 2-200.  Criden & Love, a Florida law firm, which is not subject to the California Rules of Professional Conduct, was unaware of the requirements of Rule 2-200 at the time the referral agreement was executed.  At no time did Saveri advise Criden & Love of Rule 2-200 of the California Rules of Professional Conduct, or that the referral agreement might not comply with Rule 2-200.

19.     The next day, Berger and Montague executed a similar referral agreement with Criden & Love.

///

12

### Gold Bennett Files its Complaint

20.     Meanwhile, Gold Bennett had completed its own investigation of the titanium dioxide market and had concluded that price fixing had occurred.  After some conversations, Lieff Cabraser and Gold Bennett agreed that they would file separate complaints with their respective clients in Baltimore, and then would seek to be appointed Co-Lead Class Counsel.

21.     On February 9, 2010, Gold Bennett filed a complaint with its client Haley Paint Company.  *Haley Paint Company v. Kronos Worldwide, Inc. et al.*, 10-cv-318 (D. Md.).

### Saveri and Lieff Cabraser File Their Complaint with Isaac Industries

22.     On February 12, 2010, Lieff Cabraser filed a complaint with Isaac Industries as the plaintiff.  *Isaac Industries, Inc. v. E.I. Dupont, et al.* 10-cv-323 (D. Md.) (hereinafter, the Isaac case and the Haley case will be collectively referred to as the "TIO2 Action").  Saveri is listed as counsel for Isaac Industries on the complaint.

23.     No other antitrust law firm filed a complaint in the TIO2 Action.  It is very unusual for only two complaints to be filed in an antitrust class action.  This fact demonstrates how difficult it was to find a client who, having directly purchased titanium dioxide from one of the price-fixing companies, was still willing to pursue a class action against one of its suppliers.

### Lieff Cabraser, with Isaac Industries as its Client,
### Secures a Co-Lead Class Counsel Position in the TIO2 Action

24.     On April 12, 2010, the two law firms filed a consolidated complaint with both plaintiffs in the TIO2 Action.  After a motion to dismiss filed by defendants was denied, Gold Bennett and Lieff Cabraser moved to memorialize their roles in the case.  On April 1, 2011, the Court entered CMO No. 2, which appointed Lieff Cabraser and Gold Bennett Co-Lead Class Counsel.

25.     While at Lieff Cabraser, Saveri worked approximately 28 months in the TIO2 Action in a "leadership role," with the "primary responsibility" at Lieff Cabraser for overseeing the case.

### Saveri Leaves Lieff Cabraser to Open Up His Own Law Firm

26.     On June 1, 2012, Saveri left Lieff Cabraser and opened up his own law firm called the Joseph Saveri Law Firm.

27.     Prior to leaving Lieff Cabraser, Saveri asked Criden & Love permission for his new law firm to appear on behalf of Criden & Love clients in certain ongoing matters, including the TIO2 action. Criden & Love agreed so long as Saveri paid Criden & Love the same referral fee agreed to by Lieff Cabraser in each action.  Saveri never once told Criden & Love that he would not pay a referral fee in any of the actions, including the TIO2 action.  Saveri knew that Criden & Love expected Saveri to pay a referral fee if he continued to work on any of the actions, including the TIO2 Action.

### Saveri Files A Notice of Appearance on Behalf of Breen

28.     On June 1, 2012, apparently hoping to dodge any referral obligation to Criden & Love, Saveri filed a notice of appearance on behalf of a different plaintiff (East Coast Colorants LLC d/b/a Breen Color Concentrates ("Breen")) that had intervened in the case six months earlier.

29.     Saveri never withdrew his appearance on behalf of Isaac Industries in the TIO2 Action.

30.     On June 29, Kevin Rayhill, Saveri's partner at the Saveri Law Firm, filed a Motion for *Pro Hac Vice* as counsel for all three plaintiffs, including Isaac Industries.  On July 25, Lisa Leebove, another Saveri Law Firm partner, filed a  Motion for *Pro Hac Vice* as counsel for all three plaintiffs, including Isaac Industries.

### Saveri Moves for Appointment as Co-lead Class Counsel

31.     On August 7, 2012, Lieff Cabraser and Gold Bennett filed a motion seeking to add the Saveri Law Firm as a third Co-Lead Class Counsel.  In the memorandum in support of the motion, Saveri represented to the Court that:

> At the time of CMO No.2, attorney Joseph R. Saveri served as head of the antitrust and intellectual property group at Lieff Cabraser **and had primary responsibility within that firm for representing Plaintiffs in this matter**.  Effective May 29, 2012, Mr. Saveri left Lieff Cabraser and opened his own law practice, the Joseph Saveri Law Firm, **where he continues to play a leadership role in representing the Plaintiffs in the present matter**, along with Lieff Cabraser and GBCS [Gold Bennett].  All Plaintiffs' counsel of record here support the present request that the Joseph Saveri Law Firm be included with Lieff Cabraser and GBCS as Interim Co-Lead Class Counsel.

14

1   *See* Memorandum In Support of Motion to Amend Case Management Order No. 2, attached hereto as

2   Exhibit "B." (emphasis supplied)

3       32.   On August 7, the Court granted the motion, adding the Saveri Law Firm as a third Co-

4   Lead Class Counsel.

5       33.   On August 8, Criden & Love sent an e-mail congratulating Saveri and confirming that his

6   new law firm would be paying Criden & Love a 12.5% referral fee.  Despite the fact that Criden & Love

7   was obviously expecting him to pay the referral fee, Saveri never responded to the e-mail.

8                   ***The TIO2 Action Settles And Saveri Receives a $10 Million Fee***

9       34.   Plaintiffs settled with each of the defendants in the TIO2 Action between July 2013 and

10  September 2013.  In total, the case settled for $163,500,000.

11      35.   In October 2013, Criden & Love sent another e-mail to Saveri to congratulate him on the

12  outcome.  Once again, Criden & Love reminded Saveri of his referral obligation.  And, despite this

13  being the second time Criden & Love was confirming the fact that he owed Criden & Love a referral

14  fee, Saveri did not respond.  In fact, Saveri not once denied that he owed Criden & Love a referral until

15  after he received his $10 million fee.

16      36.   In his affidavit requesting fees, Saveri noted that he had worked "intensively on the case

17  since its inception" as the Chair of the Antitrust Practice Group at Lieff Cabraser, which had been

18  appointed Co-Lead Class Counsel.  Saveri then notes that, after he established his own law firm, and

19  since his new law firm was appointed Co-Lead Class Counsel: "I have ***continued my leadership***

20  ***position*** in the case*,* exercising day-to-day management and supervision over the litigation."

21      37.   The Saveri Law Firm reported a total of 6,425 hours for 15 months.  The Saveri Law

22  Firm's lodestar was  $3,777,403.50.  Saveri received a 2.61 Lead Class Counsel multiplier, resulting in a

23  fee award of approximately $10 million.

24      38.   Lieff Cabraser paid Criden & Love 12.5% of its recovery for the Isaac Industries referral.

25      39.   Berger & Montague paid Criden & Love 12.5% of its recovery for the Isaac Industries

26  referral.

27      40.   Saveri and the Saveri Law Firm refuse to pay Criden & Love a 12.5% referral fee, even

28  though it was the referral of Isaac Industries to Saveri that allowed them to recover $10 million.

41.     Unlike Lieff Cabraser and Berger & Montague, Saveri and the Saveri Law Firm did not pay any referral fee in the TIO2 Action, either in connection with their representation of Isaac Industries or their representation of Breen.

### COUNT I

### (Contract Implied in Fact)

42.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

43.     In 2012, Saveri asked Criden & Love permission for his new law firm to appear on behalf of Criden & Love clients in certain ongoing matters, including the TIO2 action.  Criden & Love agreed so long as Saveri paid Criden & Love the same referral fee agreed to by Lieff Cabraser in each action.  Saveri never once told Criden & Love that he would not pay a referral fee in any of the actions, including the TIO2 action.  Saveri knew that Criden & Love expected Saveri to pay a referral fee if he continued to work in the TIO2 Action.

44.     In the TIO2 Action, Saveri filed a Notice of Appearance on behalf of Breen.  But Saveri never withdrew his appearance for Isaac Industries.  In fact, contrary to any suggestion that he was abandoning Isaac Industries, his new law firm filed several *Pro Hac Vice* Motions on behalf of Isaac Industries.

45.     Saveri then moved to be appointed Co-Lead Class Counsel.  Saveri represented to the Court that he should be appointed Co-Lead Class Counsel because, during the preceding 28 months, he had been the attorney at Lieff Cabraser with "primary responsibility" for prosecuting the TIO2 action, and that he wanted to continue that "leadership role."  During those preceding 28 months that Saveri had primary responsibility at Lieff Cabraser and was performing his leadership role in the TIO2 Action, he was representing Isaac Industries, a Criden & Love client.

46.     Saveri knew, or had reason to know, that his conduct – failing to withdraw his representation for Isaac Industries, filing *Pro Hac Vice* Motions on behalf of Isaac Industries, and requesting a Co-Lead Class Counsel position based on all of the work he performed while representing Isaac Industries – would lead Criden & Love to infer or interpret his conduct as an agreement to pay Criden & Love a 12.5% referral fee.

16

47.     Even after Saveri obtained the Co-Lead Class Counsel position, his conduct – remaining silent in response to Criden & Love's e-mails confirming his referral – only reinforces the fact that Saveri assented to paying Criden & Love a referral fee.

48.     By virtue of Saveri's conduct, an implied-in-fact contract was created between Criden & Love on the one hand and Saveri and the Saveri Law Firm on the other.

49.     Saveri and his law firm breached that contract by refusing to pay Criden & Love a 12.5% referral fee on their recovery in the TIO2 Action.

50.     Saveri and the Saveri Law Firm have caused Criden & Love damages.

**COUNT II**

**(Money Had and Received)**

51.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

52.     Saveri and the Saveri Law Firm received attorney fees in the TIO2 Action only because Criden & Love initially referred Isaac Industries to Saveri and Lieff Cabraser.

53.     Saveri and the Saveri Law Firm have refused to pay Criden & Love its 12.5% referral fee.  Saveri and the Saveri Law Firm have therefore become indebted to Criden & Love for 12.5% of the amount of his recovery in the TIO2 Action.

54.     It would work an injustice if Saveri and the Saveri Law Firm were permitted to keep Criden & Love's 12.5% referral fee.

55.     As a direct result of Saveri and the Saveri Law Firm's refusal to pay Criden and Love its 12.5% referral fee, Criden and Love has suffered damages.

**COUNT III**

**(Unjust Enrichment/Restitution)**

56.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

57.     In the alternative, it would be unjust for Saveri and the Saveri Law Firm to retain Criden & Love's referral fee.

58.     Criden & Love referred Isaac Industries to Lieff Cabraser in the TIO2 Action.

17

59.     Saveri, on behalf of Isaac Industries, filed a complaint in the TIO2 Action.

60.     Saveri, as Chair of Lieff Cabraser's Antitrust Department, functioned as the senior lawyer with "primary responsibility" for prosecuting the TIO2 action for 28 months.  It was during those 28 months that Saveri performed a "leadership role" in the TIO2 Action.

61.     In June 2012, Saveri decided to leave Lieff Cabraser to start a new firm.

62.     Saveri asked Criden & Love permission for his new law firm to appear on behalf of Criden & Love clients in certain ongoing matters, including the TIO2 action.  Criden & Love agreed so long as Saveri paid Criden & Love the same referral fee agreed to by Lieff Cabraser in each action. Saveri never once told Criden & Love that he would not pay a referral fee in any of the actions, including the TIO2 action.  Saveri knew that Criden & Love expected Saveri to pay a referral fee if he continued to work in the TIO2 Action.  In fact, despite several e-mails confirming the referral fee, Saveri remained silent.

63.     Apparently believing that if he filed a Notice of Appearance for another current plaintiff in the TIO2 Action, he would be able to avoid the amount of Criden & Love's referral fee, Saveri contacted Vince Esades, a lawyer who represented Breen in the TIO2 Action.

64.     Esades agreed that Saveri could file a Notice of Appearance for Breen.  Saveri then filed a Notice of Appearance on behalf of Breen.

65.     After the Notice of Appearance for Breen was filed, Saveri moved to be appointed Co-Lead Counsel.  But Saveri could not represent to the Court that he deserved to be Co-Lead Counsel because he filed a Notice of Appearance for Breen.  Instead, he had to tell the truth to the Court, that is, he should be appointed Co-Lead Counsel because, for the past 28 months he was the lawyer at Lieff Cabraser with "primary responsibility" for prosecuting the TIO2 action, and that he wanted to continue his "leadership role."

66.     Had Criden & Love not referred Isaac Industries to Saveri and Lieff Cabraser, Saveri would have never had a "leadership role" in the TIO2 case prior to seeking a Co-Lead Class Counsel appointment.  Therefore, it was only because of Criden & Love's referral of Isaac Industries to Saveri in 2010 that Saveri was able to become a Co-Lead Class Counsel in 2012, generate a $3.77 million lodestar, receive a 2.61 multiplier and be paid a $10 million fee.

67.     Saveri and the Saveri Law Firm were not given the opportunity to work as a Co-Lead Class Counsel in the TIO2 Action because they filed a Notice of Appearance for Breen.

68.     Saveri has refused to pay Criden & Love a referral fee even though Saveri would have never recovered $10 million had Criden & Love not referred Isaac Industries to him and Lieff Cabraser.

69.     Saveri and the Saveri Law Firm have received a benefit – a $10 million attorney fee.

70.     Under the circumstances described above, to allow Saveri and the Saveri Law Firm to keep the $10 million attorney fee without paying Criden & Love a referral fee would be unjust and inequitable at the expense of Criden & Love.

## COUNT IV

### (Quantum Meruit)

71.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

72.     In the alternative, Criden & Love is entitled to Quantum Meruit.

73.     Criden & Love conferred a benefit on Saveri and the Saveri Law Firm that they have unjustly retained.

74.     The proper measure for Quantum Meruit in this case is how much of a benefit Criden & Love's referral conferred on Saveri and the Saveri Law Firm.

75.     Using established customs of the industry to determine the value of Criden & Love's referral, the proper amount of Quantum Meruit is at least one third (33 1/3%) of Saveri and the Saveri Law Firm's recovery in the TIO2 Action, or approximately $3.3 million.

## COUNT V

### (Fraud - Material Misrepresentation)

76.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

77.     Criden & Love entered into a referral agreement with Lieff Cabraser.  The referral agreement contained the following clause: "Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later procures another client this matter."

78.     At the time of entering into the referral agreement, Saveri was the Chair of the Antitrust Department of Lieff Cabraser.

79.     By approving the referral agreement as Chair of the Antitrust Department of Lieff Cabraser, by signing and filing a Complaint based on the referral agreement, by later requesting permission to continue representing Isaac Industries at his new law firm, by failing to withdraw his appearance for Isaac Industries, and by ultimately moving for Co-Lead Class Counsel based on his work at Lieff Cabraser while representing Isaac Industries, Saveri engaged in conduct that represented to Criden & Love that (regardless of whether he remained at the firm) he would personally abide by and respect all of the referral agreement's provisions, including the requirement that acquiring a new client would not affect the payment of a referral fee to Criden & Love.

80.     Saveri's representation was false, and he knew that it was false when he made it.

81.     Saveri intended that Criden & Love rely on the representation.  Criden & Love in fact reasonably relied on his representation.  Had Saveri made it known to Criden & Love that he actually believed that filing a notice of appearance for another client would vitiate the requirement for him to pay a referral fee to Criden & Love, Criden & Love would have objected to Saveri's request to become a Co-Lead Class Counsel.

82.     Criden & Love suffered damages based on its reliance on the representation because Saveri now refuses to pay a referral fee to Criden & Love.

## COUNT VI

### (Constructive Fraud)

83.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

84.     Criden & Love referred Isaac Industries to Saveri and Lieff Cabraser so that they could file a complaint in the TIO2 Action.

85.     Saveri is a California lawyer who is subject to the California Rules of Professional Conduct.  Saveri knew about the requirements of Rule 2-200.   Criden & Love, a Florida law firm not subject to the California Rules of Professional Conduct, was unaware of the requirements of Rule 2-200.

86.     These circumstances created  a confidential relationship between Saveri and Criden & Love.  It also placed Criden & Love in a position of vulnerability *vis-a-vis* Saveri.

87.     Saveri took advantage of that vulnerability.  Saveri approved of the referral agreement as Chair of Lieff Cabraser's Antitrust Department, representing that the referral agreement complied with all applicable rules and regulations.  That approval was misleading because Saveri knew that the referral agreement did not comply with Rule 2-200.

88.     Criden & Love was unaware of Rule 2-200 at the time the referral was executed.

89.     Saveri intended to deceive Criden & Love by concealing the fact that the referral agreement, when executed, did not comply with Rule 2-200.

90.     Had Saveri advised Criden & Love of Rule 2-200, Criden & Love would have complied with Rule 2-200 at the time of the referral's execution.

91.     More importantly, Criden & Love would have then insisted that Saveri comply with Rule 2-200 at the time Saveri started his new law firm, which would have caused Saveri to break his silence and reveal that he never intended to pay Criden & Love a referral fee.

92.     Saveri's concealment of Rule 2-200 therefore was a substantial factor in causing Criden & Love damages.

## COUNT VII

### (Fraud - Concealment)

93.     Criden & Love realleges the allegations of paragraphs 1 through 41 as if set forth herein in full.

94.     Saveri requested permission for his new law firm to represent Isaac Industries, obtained permission from Criden & Love to represent its client, failed to withdraw his appearance on behalf of Isaac Industries, filed *Pro Hac Vice* Motions on behalf of Isaac Industries, filed a motion to be appointed Co-Lead Class Counsel based on his work on behalf of Isaac Industries, and remained silent in response to e-mails by Criden & Love confirming the referral fee.

95.     Despite Saveri's representations and conduct that indicated that Saveri would honor his referral obligation to Criden & Love, Saveri concealed the fact that he did not intend to pay Criden &

Love a referral fee until after he was appointed a Co-Lead Class Counsel and the Court entered its attorney fee award.

96.    Had Saveri revealed his intention not to pay Criden & Love a referral fee, Criden & Love would have objected to his appointment as a Co-Lead Class Counsel and/or raised the issue with the Court in the TIO2 Action prior to the award and distribution of fees in order to get Saveri to agree to the referral fee before the Court, or to have the Court order Saveri to pay the referral fee if he wanted to become a Co-Lead Class Counsel.

97.    Saveri's concealment of the fact that he never intended to pay Criden & Love a referral fee has therefore caused Criden & Love damages.

## PUNITIVE DAMAGES

98.    Saveri purposefully did not disclose Rule 2-200 to Criden & Love.  In addition, after he left to start his new law firm, he embarked on an unlawful scheme to avoid his obligation of paying a referral to Criden & Love even though it was their client that made it possible for him to recover $10 million in the TIO2 case.

99.    After starting his new firm, but before he moved for Co-Lead Class Counsel, Saveri filed an appearance on behalf of Breen, another plaintiff in the TIO2 Action.  There was absolutely no reason to file this appearance other than to try to avoid his responsibility of paying Criden & Love a referral fee.

100.    Both before and after moving for Co-Lead Class Counsel, and not until after the Court in the TIO2 Action had awarded fees, Saveri purposefully kept Criden & Love in the dark about his ultimate plan not to pay a referral fee so that the issue could not be timely raised in the TIO2 Action.

101.    Saveri's conduct has shown an extreme indifference to Criden & Love's rights.  Saveri intended to cause injury to Criden & Love.  Saveri committed fraud.

102.    Saveri's unlawful, reprehensible, fraudulent conduct warrants punitive damages in an amount no less than three times the amount of Criden & Love's referral fee, or 37.5% of his recovery in the TIO2 Action.

///

///

### PRAYER FOR RELIEF

**WHEREFORE**, Michael E. Criden, P.A., dba Criden & Love, P.A. prays judgment as follows:

(1)  That the Complaint be dismissed with prejudice and plaintiff take nothing thereby;

(2)  On its Counterclaim, for (a) actual, incidental and consequential damages according to proof; (b) restitution/disgorgement/unjust enrichment/quantum meruit; (c) punitive damages; and (d) costs, pre-judgment interest, post-judgment interest.

(3)  For such other further relief as this Court deems appropriate.

### DEMAND FOR JURY TRIAL

Criden & Love demands a trial by jury on all issues so triable.

DATED: August 29, 2014

ROBERT T. SULLWOLD
JAMES A. HUGHES
SULLWOLD & HUGHES

CURTIS JAY MASE
CAMERON EUBANKS
MASE LARA

By:        /s/ Robert T. Sullwold
                Robert T. Sullwold
Attorneys for Defendant and Counterclaimant MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A

23