Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for plaintiffs and Counterdefendants
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A., a Florida corporation,<br><br>    Defendant.<br><br>_____<br><br>MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A., a Florida corporation,<br><br>    Counterclaimant,<br><br>    v.<br><br>JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI,<br><br>    Counterdefendants.<br>_____ | No. 3:14-cv-1740 EDL<br><br>**PLAINTIFFS AND COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      February 10, 2015<br>Time:      9:00 a.m.<br>Courtroom: E, 15th Floor<br>Judge:     Hon. Elizabeth D. Laporte<br>           Chief Magistrate Judge |

*Sidebar:* BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...............................................................................................1

II.     SUMMARY JUDGMENT STANDARD ..........................................................2

III.    SUMMARY OF UNDISPUTED FACTS .........................................................3

      A.      Parties and Legal Status.........................................................................3

      B.      Criden Has No Express Agreement with Plaintiffs ................................4

      C.      Plaintiffs Made No Agreement Implied by Subsequent Conduct ....................................................................................................5

      D.      Criden Has Received Full Compensation .............................................10

      E.      Plaintiffs' Compensation Awarded in the TiO2 Action .......................11

IV.     CRIDEN'S CLAIMS FAIL AS A MATTER OF LAW ..................................12

      A.      No Implied Contract to Pay a Referral Fee for the Referral of Isaac Industries Exists .........................................................................12

      B.      No Money Had and Received Claim Exists ..........................................16

      C.      There is No Unjust Enrichment ............................................................17

      D.      No Claim for *Quantum Meruit* Exists ..................................................22

      E.      The Fraud Claims Fail .........................................................................23

            1.      There Was No Misrepresentation or Concealment....................23

            2.      There Was No Duty to Disclose Rule 2-200 ............................24

V.      CONCLUSION..................................................................................................25

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Barber v. Kimbrell's, Inc.*
577 F.2d 216 (4th Cir. 1978) ........................................................................19

*Beck v. Wecht*
28 Cal. 4th 289 (2002) ...............................................................................25

*Best Western Intern., Inc. v. Furber*
2008 WL 4182827 (D. Ariz. Sept. 5, 2008) ...................................................3

*Beverly Way Associates v. Barham*
226 Cal. App. 3d 49 (1990) ........................................................................15

*Bilan v. City and County of Honolulu*
2006 WL 3201874 (D. Haw. Nov. 2, 2006) ...................................................3

*Binder v. Aetna Life Ins. Co.*
75 Cal. App. 4th 832 (1999) .......................................................................16

*Chambers v. Kay*
29 Cal. 4th 142 (2002) ...............................................................................22

*Committee on Children's Television, Inc. v. General Foods Corp.*
35 Cal. 3d 197 (1983) ................................................................................24

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*
69 Cal. App. 3d 268 (1977) ........................................................................13

*Earhart v. William Low Co.*
25 Cal. 3d 503 (1979) ................................................................................23

*First Nationwide Savings v. Perry*
11 Cal. App. 4th 1657 (1992) .....................................................................18

*Guzman v. Visalia Community Bank*
71 Cal. App. 4th 1370 (1999) .....................................................................15

*Hollingsworth Solderless Terminal Co. v. Turley*
622 F.2d 1324 (9th Cir, 1980) ....................................................................16

*In re Titanium Antitrust Litigation*
No. 10-cv-00318 RDB ..................................................................................4

*Jogani v. Superior Court*
165 Cal. App. 4th 901 (2008) .....................................................................17

*Kossian v. American National Insurance Co.*
254 Cal. App. 2d 647 (1967) ......................................................................20

*Maglica v. Maglica*
66 Cal. App. 4th 442 (1998) .......................................................................22

*Margolin v Shemaria*
85 Cal. App. 4th 891 (2000) .................................................................18, 22

*Mathews v. Orion Healthcorp Inc.*
2014 WL 4245986 (N.D. Cal. Aug. 27, 2014) ..........................................2, 21

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-ii-

*Pagdilao v. Maui Intercontinental Hotel*
    703 F. Supp. 863 (D. Haw. 1988) ...................................................................3

*Palmer v. Gregg*
    65 Cal. 2d 657 (1967) ...............................................................................22

*Peterson v. Cellco Partnership*
    164 Cal. App. 4th 1583 (2008) ....................................................................21

*Philpott v. Superior Court*
    1 Cal. 2d 512 (1939) ............................................................................16, 17

*Prakashpalan v. Engstrom, Lipscomb & Lack*
    223 Cal. App. 4th 1105 (2014) ....................................................................24

*Producers Cotton Oil Co. v. Amstar Corp.*
    197 Cal. App. 3d 638 (1988) ......................................................................22

*Silva v. Providence Hosp. of Oakland*
    14 Cal. 2d 762 (1939) ...............................................................................13

*Tarlesson v. Broadway Foreclosure Investment, LLC*
    184 Cal. App. 4th 931 (2010) .....................................................................21

*Waddy v. Sears, Roebuck & Co.*
    1994 WL 392483 (N.D. Cal. July 8, 1994) .......................................................3

*Weitzenkorn v. Lesser*
    40 Cal. 2d 778 (1953) ...............................................................................13

*Younan v. Equifax Inc.*
    111 Cal. App. 3d 498 (1980) ......................................................................24

## STATUTES

California Corporations Code
    § 16306(c) ...............................................................................................21
    § 16703(b) ............................................................................................4, 21

## OTHER AUTHORITIES

1 *Corbin on Contracts*,
    § 1.18 (rev. ed. 1993) ................................................................................17

1 Witkin, *Summary of California Law*,
    Contracts § 1037 (10th ed. 2005) .................................................................13

5 Witkin, *Summary of California Law*,
    Torts § 772 (10th ed. 2005) ........................................................................23
    Torts § 793-94 .........................................................................................24

Civil Jury Instructions No. 305 .......................................................................13

*Restatement of the Law Second*,
    Contracts 2d § 222 (1993) ..........................................................................16

*Restatement of the Law Third*,
    Restitution and Unjust Enrichment § 1, com. c. ................................................18
    Restitution and Unjust Enrichment § 31 Vol. 1 .................................................22
    Restitution and Unjust Enrichment § 48, Vol. 2 (2011) .......................................2, 19, 20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**BARTKO ZANKEL BUNZEL**

BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1

**RULES**

Federal Rules of Civil Procedure
    Rule 23(g)(1),(3),(4) ................................................................................10
    Rule 56.........................................................................................................25
    Rule 56(e)(2) ...............................................................................................2

N.D. Cal. Civil Local Rule 11-4 ........................................................................4

State Bar of California Rules of Professional Conduct
    Rule 2-200.........................................................................21, 22, 24

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2

PLEASE TAKE NOTICE that on February 10, 2015, at 9:00 a.m., or as soon

3

thereafter as the matter may be heard in Courtroom E, 15th Floor, of the above captioned Court,

4

located at 450 Golden Gate Avenue, San Francisco, California, plaintiffs/counterdefendants Joseph

5

Saveri Law Firm, Inc. and Joseph R. Saveri ("plaintiffs") will and hereby do move the Court for

6

summary judgment or, alternatively summary adjudication, pursuant to Rule 56 of the Federal

7

Rules of Civil Procedure that defendant/counterclaimant Michael E. Criden, P.A. *dba* Criden &

8

Love, P.A.'s ("Criden & Love") claims for relief against plaintiffs fail as a matter of law.

9

This motion is based on this Notice of Motion, the attached Memorandum of Points

10

and Authorities, the concurrently filed declaration(s) of Joseph R. Saveri and Robert H. Bunzel,

11

and on any additional evidence and arguments that may be presented before or at the hearing on

12

this motion.

13

DATED:  January 6, 2014

14

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

15

16

17

By:  _____/s/ Robert H. Bunzel_____
Robert H. Bunzel
Attorneys for Plaintiffs and Counterdefendants
JOSEPH SAVERI LAW FIRM, INC.
AND JOSEPH R. SAVERI

18

19

20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

21

I.      **INTRODUCTION**

22

No legal or equitable basis exists for Criden to collect a referral fee from plaintiffs

23

following Mr. Saveri's departure from Lieff, Cabraser, Heimann & Bernstein ("Lieff Cabraser"),

24

which fully performed its agreement with Criden to pay a referral fee regarding an antitrust case.

25

There is indisputably no express agreement between Criden and plaintiffs.  An implied agreement is

26

equally wanting since it would require proof that plaintiffs intended to accept an offer from Criden,

27

and Criden's attorney-witnesses have now confirmed by sworn testimony their belief that plaintiffs

28

did not so intend.  Criden's fraud claims fail because plaintiffs in a public filing appeared in the case

-1-

for a non-Criden client, overtly expressing their intent not to pay Criden, and there was no duty on the part of plaintiffs to advise Criden about California ethical rules and division of fees. Concepts of unjust enrichment, moreover, do not create a triable issue because plaintiffs received only fees fully earned and awarded pursuant to a district court Order.

As noted in the *Restatement of the Law Third*, Restitution and Unjust Enrichment § 48, p. 159, Vol. 2 (2011), a party seeking restitution of a third-party payment must demonstrate a "better legal or equitable right" than the other party.  Following party depositions, it is clear Criden cannot prove a contractual entitlement, and it has no paramount interest in equity.

Criden's "unwritten rule" that "you don't mess with the referring attorneys" out of "respect" is inapposite to plaintiffs here who received no client referral from Criden and cannot create a basis for recovery.   (Declaration of Robert H. Bunzel and Request for Judicial Notice, hereafter "Bunzel Decl." Exh. C [Criden Depo. 69:14-72:22].)

Granting the present motion will avoid wasteful third-party discovery and an expensive trial.  This case is tailor made for summary judgment.

## II.    SUMMARY JUDGMENT STANDARD

The standards for summary judgment were recently set forth by this Court in *Mathews v. Orion Healthcorp Inc.*, 2014 WL 4245986, *6 (N.D. Cal. Aug. 27, 2014).

The present motion for summary judgment or adjudication concerns all (or each) of Criden's seven claims for relief in its Answer and Counterclaim (Dkt. 44, hereinafter "Counterclaim"), as to which Criden bears the burden of proof.  "If the moving party meets its initial burden, the opposing party 'may not rely merely on allegations or denials in its own pleading'; rather, it must set forth 'specific facts showing a genuine issue for trial.'  *See* Fed. R. Civ. P. 56(e)(2); *Anderson,* 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, 'the moving party is entitled to judgment as a matter of law.'  *Celotex,* 477 U.S. at 323."  *Mathews v. Orion Healthcorp Inc.*, *supra* at *6.

The crux of the Counterclaim is an alleged implied agreement to pay a referral fee, *see* § IV A, *infra*.  Where "there is no issue of fact with respect to plaintiff's claim for breach of implied contract," then "summary judgment on that claim is granted."  *Pagdilao v. Maui*

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   *Intercontinental Hotel,* 703 F. Supp. 863, 869 (D. Haw. 1988).  *See also, Best Western Intern.,*

2   *Inc. v. Furber*, 2008 WL 4182827, *4 (D. Ariz. Sept. 5, 2008) (when claimant "presented no

3   argument in support of its assertion that reasonable jurors may infer an implied contract and breach,"

4   summary judgment was proper); *Bilan v. City and County of Honolulu*, 2006 WL 3201874, *13 (D.

5   Haw. Nov. 2, 2006); *Waddy v. Sears, Roebuck & Co.*, 1994 WL 392483, *11 (N.D. Cal. July 8,

6   1994).

7          Criden can show no disputed material facts with respect to implied contract and its

8   other claims, and plaintiffs are entitled to judgment as a matter of law.

9   III.   **SUMMARY OF UNDISPUTED FACTS**

10         A.   Parties and Legal Status

11         Prior to June 2012, Mr. Saveri was an attorney and a partner in the San Francisco

12   office of Lieff Cabraser.  (Declaration of Joseph R. Saveri, hereafter "Saveri Decl." ¶ 2.)  During all

13   times relevant to this case, Lieff Cabraser was a law firm and a registered California limited liability

14   partnership.  (Saveri Decl. ¶ 2; Bunzel Decl. Exh. A;  Bunzel Decl. Exhs. D and E [Fastiff Depo.

15   74:18-75:1; Glackin Depo. 33:4-17].)   Criden does not dispute that Lieff Cabraser is a limited

16   liability partnership. (Bunzel Decl. Exh. C [Criden Depo. 50:3-6].)

17         Mr. Saveri has substantial expertise in antitrust class actions and other complex class

18   actions.  He has served as lead counsel in a number of these cases.  (Saveri Decl. ¶ 3.)

19         On April 25, 2012, Mr. Saveri gave Lieff Cabraser written notice of his intent to

20   withdraw from the firm.  (Saveri Decl. ¶ 10, Exh. 2.)  Mr. Saveri founded another law firm sometime

21   in May 2012, which eventually became known and operated as the Joseph Saveri Law Firm, Inc.

22   (Saveri Decl. ¶ 10.)  In late May 2012, Mr. Saveri sent a general email of his withdrawal from Lieff

23   Cabraser and the formation of his new firm.  (Saveri Decl. ¶ 10, Exh. 3.)  The Joseph Saveri Law

24   Firm, Inc. operated as a law firm thereafter.

25         Criden & Love ("Criden") is the name of the law firm of Michael E. Criden, P.A., a

26   Florida Professional Association.  (Counterclaim ¶ 1.)  Mr. Love has the authority to bind the Criden

27   firm. (Bunzel Decl. Exhs. B and C [Love Depo. 13:16-22; Criden Depo. 17:9-19].)  Criden refers

28   clients to class action plaintiff firms in exchange for a referral fee (Counterclaim ¶ 1), an activity that

-3-

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  represents about fifty percent of its business.  (Bunzel Decl. Exh. C [Criden Depo. 12:10-16].)  Since

2  2001, Criden has appeared as counsel in California district courts at least 19 times.  Mr. Love has

3  declared his familiarity with the Northern District Local Rules and agreed to abide by the Standards

4  of Professional Conduct at N.D. Cal. Civil Local Rule 11-4.  (Bunzel Decl. Exhs. B [Love Depo.

5  24:14-25:18; 26:14-24]; G and H.)

6        B.   <u>Criden Has No Express Agreement with Plaintiffs</u>

7        On February 8, 2010, Eric Fastiff, a partner at Lieff Cabraser, and Criden engaged in

8  an email exchange whereby Lieff Cabraser agreed to pay Criden a referral fee of 12.5 percent of any

9  fees Lieff Cabraser received in connection with a lawsuit ultimately known as *In re Titanium*

10  *Antitrust Litigation*, No. 10-cv-00318 RDB, D.C. Maryland (the "TiO2 Action").  (Bunzel Decl.

11  Exh. B [Love Depo. 140:8-16]; Saveri Decl. ¶ 4, Exh. 1.)  The email requested Mr. Fastiff, a partner

12  in Lieff Cabraser, to "confirm" by reply email, if he agreed to the referral arrangement.  Mr. Saveri

13  was a partner at Lieff Cabraser at the time.

14        It was Criden's practice to send form "confirm" emails to referred attorneys at the

15  outset of a case as a form of offer, in order to "confirm their acceptance" of an agreement to pay the

16  referral.   (Bunzel Decl. Exhs. B [Love Depo. 141:2-142:1] and J.)   The email Mr. Love sent to

17  Mr. Fastiff followed this practice and form.  (Saveri. Decl. Exh. 1.)

18        Mr. Fastiff responded, confirming acceptance on behalf of Lieff Cabraser. (Saveri

19  Decl. Exh. 1.)  After Lieff Cabraser's acceptance of the terms of the referral, Criden referred Isaac

20  Industries, Inc. ("Isaac Industries") as a client to be represented by Lieff Cabraser.  Criden and Isaac

21  Industries executed an engagement agreement retaining Criden and Lieff Cabraser to represent Isaac

22  Industries in the TiO2 Action. (Saveri Decl. ¶ 4; Bunzel Decl. Exhs. B [Love Depo. 138:9-24] and I].)

23        Criden admits that its email agreement with Mr. Fastiff on behalf of Lieff Cabraser did

24  not bind individual partners of Lieff Cabraser or apply to partners who leave the firm, as it does not

25  expressly so provide.  (Bunzel Decl. Exh. B [Love Depo. 71:3-14].)[1]

26

27     [1]    It is undisputed that agreements of a limited liability partnership do not extend to individual partners, including partners who subsequently leave the firm. Cal. Corp. Code §§ 16306(c),

28  16703(b).

-4-

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    At no time—subsequent to Mr. Saveri's announcement of withdrawal or at any time

2    thereafter—did the plaintiffs accept or agree to be bound by the terms of the email agreement

3    between Criden and Lieff Cabraser.  (Saveri Decl. ¶¶ 5-6.)  Criden admits there was no express

4    agreement between Criden and plaintiffs:  Mr. Saveri "didn't say yes, I accept your proposal. . . ."

5    (Bunzel Decl. Exh. B [Love Depo. 188:23-189:4].)  Mr. Love also explicitly admitted at deposition:

6    "we don't have an express breach of contract claim" in the present action. (Bunzel Decl. Exh. B

7    [Love Depo. 75:5-76:15.)

8        C.    Plaintiffs Made No Agreement Implied by Subsequent Conduct

9        The record evidence shows no implied agreement, and rather plaintiffs' conduct

10   demonstrated the absence of an agreement and *manifested the intention not to be bound* by the terms

11   of the Criden/Lieff Cabraser email.

12       On February 9, 2010, an antitrust class action complaint was filed by plaintiff Haley

13   Paint Company, represented by Gold, Bennett, Cera & Sidener ("Gold Bennett"), in the United States

14   District Court for the District of Maryland against a number of defendants, alleging a conspiracy to

15   fix prices of titanium dioxide.   (Saveri Decl. ¶ 7.)   On February 12, 2010, Isaac Industries,

16   represented by Lieff Cabraser, Criden and others, filed a complaint in the same court, and the two

17   cases were subsequently consolidated and comprised the TiO2 Action.

18       On April 22, 2010, Mr. Saveri filed a motion for admission *pro hac vice* on behalf of

19   plaintiff Haley Paint Company and Isaac Industries.  (Bunzel Decl. Exh. 4.)  The Court subsequently

20   appointed Lieff Cabraser, together with Gold Bennett as one of the Co-Lead Class Counsel.

21   Mr. Saveri functioned as the senior lawyer at Lieff Cabraser on the matter until he left Lieff Cabraser.

22   (Saveri Decl. ¶ 8.)

23       Consistent with other antitrust class actions, the firms retained by the named plaintiffs

24   maintained separate attorney-client relationships and responsibilities.   These functions included

25   communicating with their individual clients, including the gathering and production of client

26   documents, preparation and verification of interrogatory answers, preparation for and representation

27   of name plaintiffs  at deposition, and communication regarding approval of settlements.  (Saveri Decl.

28   ¶ 17.)  This case was no different.  As confirmed in Isaac Industries' retention agreement with Criden,

-5-

1    Criden and "and any other firms we may associate with to represent you [expressly Lieff Cabraser]"

2    were responsible for keeping Isaac Industries "informed about the lawsuit," including  "potential

3    settlements" and to "represent" Isaac Industries "in any matter in the litigation affecting [its] status as

4    a class representative."  (Bunzel Decl. Exh. B [Love Depo. 138:9-139:6].)  The firms that performed

5    these functions were limited to the parties to the agreement—Criden and Lieff Cabraser.

6    Consequently, Lieff Cabraser and Criden prepared Isaac Industries principal David Avan for

7    deposition.  (Saveri Decl. ¶ 18; Bunzel Decl. Exh. U [Declaration of Brendan P. Glackin In Support

8    of Plaintiffs' Motion for An Award of Attorney's Fees, filed October 18, 2013, ¶ 2].)  Lieff Cabraser

9    and Criden also prepared discovery responses on behalf of Isaac Industries.[2]

10         In May 2012, in preparation for the opening of his new firm, Mr. Saveri called a

11   number of business contacts.  Mr. Saveri contacted Mr. Love of Criden and advised him that he had

12   given notice of withdrawal from Lieff Cabraser and would be founding a new firm. (Saveri Decl.

13   ¶ 9.)  According to Criden, Mr. Saveri asked if he and his new firm could appear on behalf of Criden-

14   referred clients in pending litigation, including TiO2.  Mr. Love says he responded that it was

15   conditioned on Mr. Saveri agreeing to pay Criden the same referral fee agreed to by Lieff Cabraser.

16   (Bunzel Decl. Exh. B [Love Depo. 188:5-20]; *see also* Counterclaim ¶ 62.)  It is admitted that

17   plaintiffs in the May 2012 call did not agree to be bound by Lieff Cabraser's agreement with Criden

18   for the referral of Isaac Industries to Lieff Cabraser.  (Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love

19   Depo. 188:23-189:4] and did not manifest any intent to be bound.[3]

20         Consistent with this fact, on June 1, 2012, plaintiffs entered an appearance in the TiO2

21   Action as co-counsel for a different plaintiff, East Coast Colorants LLC *dba* Breen Color

22   _____

[2]    Later, Lieff Cabraser and Criden (not plaintiffs) conferred with Isaac Industries regarding
23   the proposed settlement, while Gold Bennett advised its client, Haley Paint, and Vincent Esades of
     Heins—with Mr. Saveri's input—advised their client Breen on settlement.  (Saveri Decl. ¶ 18.)
24   This individuated representation is shown in a September 2012 email exchange between Criden
     and plaintiffs who asked Mr. Love to provide information to complete Corporate Affiliation forms
25   for Isaac Industries, Inc. to be used in the Court of Appeal in connection with an attempted review
     of the class certification order under F.R.C.P. 23(f). : "As Isaac Industries, Inc. is *your client*, can
26   you get the information from them and send us the completed form by next Wednesday, 9/19." 
     (Saveri Decl. ¶ 19, Exh. 9 [S 00144], emphasis supplied.)

27   [3]    There were no further oral or written statements by plaintiffs to Criden concerning a TiO2
     referral fee until after Judgment in the TiO2 Action and an Order granting an award of attorney's
28   fees were entered.  (Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love Depo. 216:15-18].)

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Concentrates ("Breen"), along with Heins, Mills & Olson of Minneapolis, Minnesota ("Heins"). (Saveri Decl. ¶ 10, Exh. 4.)[4]  Criden did not and does not represent Breen.  Breen was not referred by Criden. (Saveri Decl. ¶ 10; Bunzel Decl. Exh. B [Love Depo. 62:18-20].)  Upon appearing for Breen, Mr. Saveri and his new firm continued to serve in a leadership capacity, working with Gold Bennett and Lieff Cabraser.

Mr. Love was counsel of record in the TiO2 Action.  He received case filings through the Court's ECF service list (Bunzel Decl. Exh. B [Love Depo. 61:20-22]), and received the June 1, 2012 Notice of Appearance by plaintiffs for Breen in the TiO2 Action. (Bunzel Decl. Exh. B [Love Depo. 191:8-192:4].)  Mr. Love testified that he could not recall when he read the Notice that the plaintiffs were representing Breen, not Isaac Industries.  (Bunzel Decl. Exh. B [Love Depo. 61:23-62:2].)

Criden now admits that plaintiffs' Notice of Appearance in the TiO2 Action for another client constituted Mr. Saveri's communication to Criden of plaintiffs' non-acceptance of the terms of the Lieff Cabraser/Criden email and their lack of intent to pay the requested referral fee or to be bound by any agreement to that effect.  (*Id*. [Love Depo. 61:23-62:11: the Notice of Appearance was an "attempt to support an argument for reducing the amount of the referral fee"]; *see also*, Bunzel Decl. Exh. C [Criden Depo. 55:7-22].)  This testimony demonstrates the basic and complete absence of a meeting of the minds on terms.  Indeed, Mr. Love went further, admitting that the Breen appearance objectively meant Mr. Saveri by "his conduct" did not agree or intend to pay "any" referral fee (there isn't "any other explanation"):

> Q.   And as I understand your testimony, currently, you believe that's accurate, that Saveri's intent in or about June 1, 2012 was to avoid any referral obligation?
>
> A.   As I sit here today, yes, that's what I currently believe based on his conduct, yes. There doesn't seem to be any other explanation.

(Bunzel Decl. Exh. B [Love Depo. 94:15-21].)

---

[4]      On July 29, 2011, Breen had intervened in the TiO2 Action as a plaintiff, represented by Heins.  (Saveri Decl. ¶ 9.)

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1        At no time after separation from Lieff Cabraser did plaintiffs enter an appearance

2   specifically for Isaac Industries.   At no time, did plaintiffs enter into a fee agreement with Isaac

3   Industries.  (Saveri Decl. ¶¶ 11-12.)  At no time, did plaintiffs manifest by word or by deed any intent

4   to be bound by the Criden/Lieff Cabraser email.  At no time, did plaintiffs manifest by work or by

5   deed, any intent to accept Criden's May 2012 proposal for a new referral agreement.  (*Id.*)  There was

6   no reason to seek an order to withdraw from representing Isaac Industries, the client of Criden and

7   Lieff Cabraser, because the Joseph Saveri Law Firm had filed a Notice of Appearance for Breen,

8   while Mr. Saveri continued to function as before in a leadership role together with Gold Bennett

9   (representing Haley) and Lieff Cabraser (representing Isaac Industries).  (Saveri Decl. ¶ 13.)

10       At no time after June 1, 2012, did the Joseph Saveri Law Firm or Mr. Saveri contact

11  Isaac Industries, report to Isaac Industries as its counsel, communicate legal advice to Isaac Industries

12  or receive instructions from Isaac Industries as a client.  (Saveri Decl. ¶ 14; Bunzel Decl. Exh. C

13  [Criden Depo 57:2-23].)  Plaintiffs took no steps to cause Isaac Industries to rely on plaintiffs as

14  retained counsel (in contrast to functioning as court-appointed Co-Lead Class Counsel, discussed

15  below).  (Saveri Decl. ¶ 14.)

16       The TiO2 Action proceeded as described above.  The other co-lead counsel in the

17  TiO2 Action and Mr. Saveri had agreed it would benefit the putative class if Mr. Saveri were

18  appointed a co-lead at his new firm.  (Saveri Decl. ¶ 16.)  When plaintiffs' associates Lisa Leebove

19  and Kevin Rayhill were moved for admission *pro hac vice* by plaintiffs' liaison counsel Robert Levin

20  on July 25, 2012 and June 29, 2012, liaison counsel identified them as counsel for "plaintiffs" or for

21  all plaintiffs including Haley Paint (which was never individually represented by Lieff Cabraser or

22  the Joseph Saveri Law Firm), in anticipation of the court's appointment of the Joseph Saveri Law

23  Firm as co-lead class counsel.  Plaintiffs' representation of Isaac Industries was at all times only as a

24  member of the putative, and later certified, class.  (Saveri Decl. ¶ 16, Exhs. 7 and 8.)

25       On August 7, 2012, plaintiffs filed a Motion to Amend Case Management Order No. 2

26  in the TiO2 Action (Saveri Decl. ¶ 15, Exh. 5.)  The Memorandum in support noted that on or about

27  May 29, 2012:

28

-8-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> Mr. Saveri left Lieff Cabraser and opened his own law practice, the Joseph Saveri Law Firm, where he continues to play a leadership role in representing the plaintiffs in the present matter, along with Lieff Cabraser and GBCS.

The Court appointed plaintiffs as interim Co-Lead Class Counsel, to continue to serve with Gold Bennett and Lieff Cabraser, shortly thereafter.  (Saveri Decl. ¶ 15, Exh. 6.)

On August 8, 2012, Mr. Saveri received an unsolicited email from Mr.  Love with a copy to Mr. Criden:

> Joe, I saw that you applied to being co-lead in TiO2.  That['s] good news.  Please *confirm* that you will be paying my firm a referral fee of 12.5% (the same Lieff agreed to pay us in this case).  Thanks. (Emphasis supplied.)

(Saveri Decl. ¶ 23, Exh. 11.)  The terminology of the email is consistent with—indeed virtually identical to—other emails Criden uses to offer to refer a client in exchange for a referral fee (Bunzel Decl. Exh. J; Saveri Decl. Exh.1.)  As noted above, it was Criden's practice to send form "confirm" emails to referred attorneys at the outset of a case as a form of offer, in order to "confirm their acceptance" of an agreement to pay the referral.  (Bunzel Decl. Exh. B [Love Depo. 141:2-142:1].)  The August 8, 2012 email was a reprise of the email Mr. Love sent to Mr. Fastiff on February 8, 2010.  (Saveri Decl. Exh. 1.)  Like that email, the August 8, 2012 email from Criden to plaintiffs shows Criden seeking plaintiffs' assent ("please confirm") to a referral fee proposal.  (Bunzel Decl. Exh. B [Love Depo. 207:18-25].)  The difference between what happened next is crucial.  In February 2010, Mr. Fastiff assented.  In August 2012, Mr. Saveri did not.

Mr. Saveri did not respond to this email.  Indeed, any response would have been illogical and inconsistent with his actions to that point.  On June 1, 2012, plaintiffs had filed a formal appearance for Breen. (Saveri Decl. ¶ 23 and Exh. 4.)  As Criden had not referred Isaac Industries to the Joseph Saveri Law Firm, there was no referral agreement.  The filing of the Notice showed that Mr. Saveri did not intend to pay any referral fee for the referral of Isaac Industries.  (Saveri Decl. ¶ 24).  Criden either actually received that Notice, or is charged with having received it, as he had also filed an appearance and received filings through the Court's ECF system.  The August 8, 2012 email shows that, in fact, Criden recognized there was no referral fee contract between plaintiffs and

1  Criden, as Criden reiterated his May 2012 offer to Mr. Saveri, again seeking acceptance that never

2  came.[5]

3        While not representing Isaac Industries individually, Mr. Saveri continued to serve as

4  Co-Lead Class Counsel upon formation of the Joseph Saveri Law Firm.  In that capacity, Mr. Saveri

5  understood he and the Joseph Saveri Law Firm "must fairly and adequately represent the interests of

6  the class." Fed. R. Civ. P. 23(g)(1),(3),(4).  (Saveri Decl. ¶ 17.)

7        D.   <u>Criden Has Received Full Compensation</u>

8        Criden has been more than fully paid for its work in the TiO2 Action, with a multiplier

9  on its lodestar, even if the handsome referral fees it received are ignored.

10        In December 2013, after extensive discovery and motion practice (over 90 depositions

11  were taken worldwide), the Maryland district court approved settlement of the TiO2 Action for

12  $163.5 million and awarded $54.5 million in attorney's fees. (Saveri Decl. ¶ 20, Exh. 10.)  The TiO2

13  Action, including the award of attorney's fees, is final, and a Final Judgment has been entered

14  resolving all claims.  (Saveri Decl. ¶ 20.) The attorney's fees have been allocated and paid to 12

15  plaintiff law firms, including Criden.  (Saveri Decl. ¶ 20.)

16        Criden did not dispute the award of attorney's fees or its allocation.  Criden received

17  four payments with respect to the TiO2 Action.  First, Criden's costs advanced of $39,398.18 were

18  reimbursed in full.  (Bunzel Decl. Exhs. B [Love Depo. 224:1-16 and O].)  Second, Criden's lodestar

19  for its attorney time on the case, submitted at $836,400 (Bunzel Decl. Exhs. B [Love Depo. 214:4-15

20  and N]), was paid to Criden at a 1.2 multiplier totaling $1,003,680. (Bunzel Decl. Exh. R.)  Third,

21  Criden received a referral fee from Lieff Cabraser equal to 12.5% of Lieff Cabraser's fees, or

22  $917,177.01.[6]  (Bunzel Decl. Exh. Q.)  Fourth, Criden received a referral fee from class counsel

23  Berger Montague in the amount of $799,523.97.  (Bunzel Decl. Exh. P.)

24

25  ----

  5    Any alternative explanation that Criden was using the "please confirm" language to create

26  the false impression that there was a prior meeting of the minds is objectively contrary to Criden's practice and Criden's testimony that Mr. Saveri, by entering the appearance for Breen, was

27  manifesting neither acceptance nor intent to be bound.

  6    Sums paid to Criden by Lieff Cabraser included work performed by Mr. Saveri at Lieff

28  Cabraser prior to June 2012.  (Saveri Decl. ¶21; Bunzel Decl. Exh. C [Criden Depo. 88:18-89:10].)

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1      Thus, Criden has received referral fees from the TiO2 case equal to $1,716,700.98,

2  plus recovery of its own fees and expenses of $1,041,898.78, for a total of $2,758,422.75.  Criden has

3  been paid by the firms it contracted with, and has been fully paid on its lodestar for the services it

4  rendered in the case.  This disposes of Criden's meritless *quantum meruit* claim.  See § IV D, below.

5          E.      Plaintiffs' Compensation Awarded in the TiO2 Action

6          Mr. Saveri submitted a declaration to the district court in the TiO2 Action describing

7  plaintiffs' lodestar and plaintiffs' costs advanced.  (Bunzel Decl. Exh. W.)  Criden does not dispute

8  the accuracy of these figures. (Bunzel Decl. Exh. B [Love Depo. 213:7-19]), and indeed bases its

9  claims in this case on plaintiffs' entitlement to the awarded fees.  (Counterclaim ¶¶ 37-40; Saveri

10  Decl. Exh. 10.)  Criden did not object to plaintiffs' fee application or assert any interest in plaintiffs'

11  fees to the district court in the TiO2 Action, and Mr. Love testified he would be guessing about what

12  would have happened if Criden had done so. (Bunzel Decl. Exh. B [Love Depo. 220:25-221:25.)

13          Solomon Cera, co-lead class counsel and attorney for Haley Paint which first filed the

14  TiO2 Action, testified about plaintiffs' contributions to the case after Mr. Saveri left Lieff Cabraser:

15      Q.    So you have personal knowledge and experience with respect
             to Mr. Saveri's contributions to the case after he left Lieff
16           Cabraser; correct?

17      A.    Yes.
       Q.    And would you agree that Mr. Saveri and The Joseph Saveri
18           Law Firm made significant contributions that helped achieve
             the positive result in the titanium case?

19      A.    Yes.
       Q.    Can you describe in general the types of contributions that
20           Mr. Saveri at The Joseph Saveri Law Firm and his other
             colleagues contributed to the case?

21      A.    Well, people who work on these cases would understand
22           they're kind of a unique animal, that they take tremendous
             devotion and effort and tenacity and skill to bring home results
23           like we brought home in titanium, and Joe Saveri and his firm
             were definitely a significant part of that. I mean, there was
24           massive discovery going on. There was briefing going on and
             all kinds of issues. There was expert discovery, class
25           certification that happened in August of 2012. The judge had
             us on extremely, you know, accelerated schedule.· The case
26           discovery was conducted throughout the world.· The judge set
27           a trial date for September 2013 that he repeatedly said he
             would not change under any circumstances. So we were facing

28

-11-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

1  arguments about arbitration and summary judgment, all kinds
2  of things. So Joe was, you know, intimately involved in
   litigating these things in conjunction with us and Lieff
3  Cabraser, and, you know, he was a very significant
   contributor, there is no question.

4  (Bunzel Decl. Exh. F [Cera Depo. 30:9-31:18].) Mr. Criden acknowledged at deposition the

5  "excellent result on behalf of all counsel" who worked on the TiO2 case. (Bunzel Decl. Exh. C

6  [Criden Depo. 63:4-10].)

7          On October 23, 2013, Mr. Love sent another unsolicited email to Mr. Saveri:

8          Joe, Michael and I want to congratulate you on achieving such a
           tremendous result in the TiO2 case. As is our practice, I just wanted
9          to remind you of your firm's 12.5% referral obligation per our
           February 2010 agreement. I look forward to working with you on
10         some new matters. (Saveri Decl. ¶ 25, Exh. 12.)

11  Consistent with prior practice and the absence of an express or implied referral agreement, Mr. Saveri

12  did not respond to this email because there was no such referral obligation. On several occasions he

13  had made it clear—objectively and subjectively to Criden—by not accepting Mr. Love's May 2012

14  and August 2012 proposals, and instead appearing for Breen, that there was no referral fee agreement

15  between Criden and plaintiffs. (Saveri Decl. ¶ 25.)

16  IV.    **CRIDEN'S CLAIMS FAIL AS A MATTER OF LAW**

17      A.    No Implied Contract to Pay a Referral Fee for the Referral of Isaac
               Industries Exists
18

19          Criden is not suing for breach of an express contract to pay a referral fee for the

20  referral of Isaac Industries to the Joseph Saveri Law Firm. *Infra*, § II B.

21          Criden does maintain a claim that there was a contract to pay a referral fee for the

22  referral of Isaac Industries that should be implied in fact. This claim is premised on a conversation

23  Mr. Love had with Mr. Saveri in May 2012, when Mr. Saveri advised he was leaving Lieff Cabraser.

24  According to Mr. Love, Mr. Saveri asked for permission to continue representing Criden clients in

25  TiO2 and another action. Mr. Love says he would agree if Mr. Saveri would agree to the terms of the

26  Lieff Cabraser/Criden email regarding Isaac Industries. (Counterclaim ¶ 43.)

27          For purposes of this motion, it will be assumed the May 2012 conversation was as

28  recalled by Mr. Love. It is undisputed that Mr. Saveri did not assent in that call or at any other time.

-12-

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

(Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love Depo. 188:23-189:4].)   Criden instead asserts that plaintiffs by subsequent conduct manifested assent to what was offered in the May 2012 call.   Criden identifies the following:   (i) plaintiffs entering an appearance for Breen without withdrawing as counsel for Isaac Industries, (ii) *pro hac vice* applications filed on behalf of associates of his firm on behalf of all plaintiffs, and (iii) Mr. Saveri moving to be appointed co-lead class counsel while advising the court he would "continue" a leadership role.   (Counterclaim ¶¶ 43-46.)

In order to prove an implied contract resulting from conduct, it is necessary to prove by that conduct *mutual* assent, *i.e.* both parties intending to promise or agree.   *Silva v. Providence Hosp. of Oakland,* 14 Cal. 2d 762, 773 (1939):   "The true implied contract, then, consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."   *See also, Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977) ("the very heart of this kind of agreement is an intent to promise.")   All of the elements of an express agreement are required to support an implied contract claim, with the exception that "conduct from which the promise may be implied" must be proved.   *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953).

The requisite proof for an implied contract claim is set forth in the California Advisory Committee on Civil Jury Instructions No. 305  ("CACI"):

> Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter into a contract.

An implied contract claim can only be sustained if the "circumstances be such as to warrant the inference that it was the expectation of *both parties* during the time that the services were rendered that compensation should be made." 1 Witkin, *Summary of California Law*, Contracts § 1037, p. 1128 (10th ed. 2005).

Here, there was undisputed conduct by plaintiffs, which Criden admits unambiguously manifests  plaintiffs' intent not to pay a referral fee in exchange for the referral of Isaac Industries.   The Criden May 2012 "proposal" (Bunzel Decl. Exh. B [Love Depo. 188:23-189:22]) was an offer that  Criden agree to refer Isaac Industries if Mr. Saveri agreed to pay the same  referral fee agreed by

-13-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

Lieff Cabraser.  To the contrary, plaintiffs did not assent but rather filed a Notice of Appearance for another client (Breen) represented by other lawyers in the TiO2 Action, and not referred by Criden. The 'terms' of Mr. Love's proposal were thus never fulfilled.

The parties' intent and conduct is likewise unambiguous.  As Mr. Love admits, plaintiffs' Notice of Appearance for Breen[7] was Mr. Saveri's way of telling Criden that plaintiffs did not intend to accept Criden's offer:

> Q.    So, again, it's your understanding or belief that, by contacting
>        Esades and filing a notice of appearance for another plaintiff ,
>        Saveri was seeking to avoid the Criden & Love referral fee?
> A.    In TiO2?
> Q.    Yes.
> A.    Yes, that's my opinion.

(Bunzel Decl. Exh. B [Love Depo. 101:7-13; 94:15-21; 100:12-101:13].)  Mr. Criden also admits that plaintiffs demonstrated the intent not to pay a referral fee for the referral of Isaac Industries when they appeared for Breen:

> Q.    All right. The paragraph reads, "On June 1, 2012, apparently
>        hoping to dodge any referral obligation to Criden & Love,
>        Saveri filed a notice of appearance on behalf of a different
>        Plaintiff, East Coast Colorants, LLC d/b/a Breen Color
>        Concentrates, Breen, that had intervened in the case six
>        months earlier." Do you see that?
> A.    Yes, I do.
> Q.    Did you review this counterclaim filed in the Northern District
>        of California before it was filed?
> A.    Yes, I believe I did.
> Q.    And you believe that allegation is accurate?
> A.    Looking back on what's transpired, absolutely.

(Bunzel Decl. Exh. C [Criden Depo. 55:7-22].)  Mr. Love's and Mr. Criden's frank testimony buttresses that of Mr. Saveri on this crucial fact.  (Saveri Decl. ¶ 10).  There is no dispute regarding plaintiffs' intent.  The implied in fact contract claim fails as a matter of law.

Since the Notice of Appearance for Breen was both a rejection of Criden's May 2012 "proposal" and an objective manifestation of the intent not to be bound, it is thus unnecessary to parse

---

[7]    While Mr. Love claims he did not see the Notice of Appearance ECF filing at the time, that is irrelevant since the filing acted as notice to all ECF participants, and Criden now admits that the filing signaled an intent not to pay it a referral fee. Maryland District Court Local Rule 1(c).

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Criden's other assertions  regarding irrelevant language in subsequent filings in the TiO2 docket.  It is

2    hornbook law that: "If the offeree's words or acts either indicate that the offeree is declining the offer

3    or justify the offeror in so inferring, the offeree will be considered to have rejected the offer."

4    *Guzman v. Visalia Community Bank*, 71 Cal. App. 4th 1370, 1376 (1999), citations  omitted.

5    Rejection by an offeree "terminates the offer."  *Beverly Way Associates v. Barham*, 226 Cal. App. 3d

6    49, 55 (1990).  It cannot be later accepted by words or conduct.

7            Criden claims that by moving to be appointed lead counsel, plaintiffs agreed to pay the

8    referral fee for the referral of Isaac Industries.  This is incorrect.  The motion, filed months after the

9    June 1, 2012 appearance for Breen, says nothing of the sort.  (Saveri Decl. ¶ 15 and Exh. 5.)  The

10   May 2012 proposal to pay a referral fee, like the Lieff Cabraser agreement, was never conditioned on

11   lead counsel status, but rather on referral of a client that plaintiffs did not accept.  The only language

12   Criden points to is a statement in the motion that Mr. Saveri "continues to play a leadership role in

13   representing the plaintiffs in the present matter."  Nothing about Isaac Industries.  Nothing about a

14   referral fee or agreement with Criden.  This statement provides no more support for an agreement

15   between Criden and plaintiffs as it would for a claim between Criden and Gold Bennett.

16           To similar effect are the *pro hac vice* applications for two associates of the Joseph

17   Saveri Law Firm in June 2012.[8]  These were not signed by Mr. Saveri or anyone with authority to

18   bind the firm to a referral fee obligation.  These were perfunctory filings by junior lawyers intended

19   to accomplish the non-controversial purpose of obtaining admission before the District of Maryland

20   to appear in a class action.  Mr. Saveri and his fellow Co-Lead Class Counsel had discussed

21   Mr. Saveri becoming interim co-lead class counsel at the time of plaintiffs' appearance for Breen, and

22   the *pro hac vice* applications were an intended part of the process to provide notice that the Joseph

23   Saveri Law Firm, Joseph Saveri and the other attorneys at the firm would be representing the class.

24   (Saveri Decl. ¶ 16.)  It would be similarly unreasonable—absurd—for someone to conclude that the

25   Joseph Saveri Law Firm had taken over individual representation for Haley Paint.

26   _____

27   [8]      The *pro hac vice* applications were form applications reciting the names of the attorneys,
     their affiliation with the Joseph Saveri Law Firm, their status in good standing with the State Bar

28   of California and other ordinary facts.  There was no particularized discussion of any factual
     matter relevant to the TiO2 Action.  (Saveri Decl. Exhs. 7 and 8.)

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    That Mr. Saveri did not file a formal withdrawal from representing Isaac Industries

2  while continuing to represent the class is of no moment.  Mr. Saveri was clearly not withdrawing

3  from the case and indeed sought appointment of his new firm to represent the class.  Haley Paint

4  continued to be represented by Gold Bennett.  Isaac Industries continued to be represented by Criden

5  and Lieff Cabraser.  Breen was represented by Heins and the Joseph Saveri Law Firm.  (Saveri Decl.

6  ¶ 13.)[9]

7    Finally, plaintiffs' representation of Isaac Industries as a member of the class cannot

8  raise an inference of intent to agree to pay Criden a referral fee, absent an agreement.  When asked at

9  deposition if there have been any circumstances where a firm paid a referral fee to Criden without a

10  written agreement, Mr. Criden and Mr. Love discussed only one other situation. (Bunzel Decl.

11  Exhs. B [Love Depo. 73:5-75:4] and C [Criden Depo. 20:7-25:1].)  Mr. Criden testified "I don't

12  believe there was anything in writing" when a local counsel who became lead paid a referral fee. (*Id.*,

13  Exh. C, 21:3-4.)  Mr. Love clarified that in that same matter, the local counsel at "the beginning" of

14  the case made an oral agreement with Criden, "he said, you know, don't worry about it, I took his

15  word," and at the end of the case the local counsel "sent me an e-mail saying don't worry, I'll pay

16  your 10 percent." (*Id.*, Exh. B, 74:18-75:4.)  Criden's referral fee custom and practice involves

17  written email agreements, [10] and there is none with plaintiffs.

18    Summary judgment must be granted on the implied in fact contract claim.

19    B.    No Money Had and Received Claim Exists

20    Next, Criden asserts a common count:  money had and received.  Criden claims that a

21  part of the attorney's fees paid to plaintiffs in the TiO2 Action belongs to Criden.  (Counterclaim

22  ¶¶ 52, 54).  As stated in *Philpott v. Superior Court*, 1 Cal. 2d 512, 522 (1939): "[A]n action as upon

---

[9]    In fact, a motion and resulting order of withdrawal would have caused substantial confusion and would have been unnecessary.  Among other things, filing such a document might have resulted in the removal of the Joseph Saveri Law Firm attorneys from the ECF list, disabling them from receiving court filings.

[10]    "We recognize that in conjunction with other factors not present in this case, a course of dealing between the parties can be relevant to inferring the existence of an implied contract." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337 (9th Cir, 1980);  *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832,850 (1999) ("[I]ntention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance."); *Restatement of the Law*, 2d Contracts, § 222.

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    contract will lie for money had and received *wherever one person has received money which belongs*

2    *to another*, and which in 'equity and good conscience,' or in other words, in justice and right, should

3    be *returned*."  (Emphasis supplied.)[11]

4          As in other class actions, all plaintiffs' counsel in the TiO2 Action filed an

5    application for an award of their fees and reimbursement of costs. [12]  This included a supporting

6    declaration from Mr. Saveri reflecting the legal work of plaintiffs, not Criden, that had benefitted the

7    class. (Bunzel Decl. Exh.W.)   Criden did not assert at that time a right to a referral fee from

8    plaintiffs, and did not object to plaintiffs' fee application (Bunzel Decl. Exh. B [Love Depo. 220:25-

9    221:25].)   Nor does Criden dispute that plaintiffs' fee hours were actually expended, and its costs

10   appropriately incurred and properly accounted or quarrel in any way with the entitlement or amount

11   of plaintiffs' fees requested.  (Bunzel Decl. Exh. B [Love Depo. 213:7-19].)  The fees earned by the

12   Joseph Saveri Law Firm were never the property of Criden.

13         Had plaintiffs received, for instance by accident, a referral fee that belonged to

14   Criden, it would be returnable as "money had and received."  But plaintiffs did not receive a referral

15   fee which must be paid back.  Like Criden and the other attorneys in the TiO2 Action, they received

16   attorney's fees based on the work they performed in the case, which were awarded by the Court in a

17   Final Judgment and duly allocated by Co-Lead Counsel pursuant to the powers given them by Court

18   Order.  (Saveri Decl. ¶¶ 21, 23.)   Summary judgment should be granted to as to Count II of the

19   Counterclaim.

20         C.    <u>There is No Unjust Enrichment</u>

21         Acknowledging the weakness of his legal claims, Criden falls back on a nebulous

22   equitable claim.  Criden claims that "had Criden & Love not referred Isaac Industries to Saveri and

23   Lieff Cabraser, [plaintiffs] would have never had a 'leadership role' in the TiO2 case prior to seeking

24   [11]    A "common count[ ] for money had and received" is an "action[ ] for Assumpsit," and "the

25   action is one at law."  *Philpott v. Superior Court*, *supra*, at p. 512.  "Assumpsit" has "the literal
     meaning 'he promised.'"  1 *Corbin on Contracts*, § 1.18, p. 51 (rev. ed. 1993); *Jogani v. Superior*

26   *Court*, 165 Cal. App. 4th 901, 906 (2008).  As a creature of promise (implied or express), the
     money had and received common count here also fails for the same reasons that Criden's implied

27   contract claim fails (*Infra*, § IV A.).

     [12]    The Court in the TiO2 Action approved an incentive payment  to Isaac Industries of
28   $25,000, which Criden supported. (Saveri Decl. ¶ 4, Exh. 11.)

1    a Co-Lead Class Counsel appointment," which enabled plaintiffs to earn substantial fees.

2    (Counterclaim ¶ 66).  The claim fails on multiple levels.

3         First, a referring lawyer is entitled to a referral fee if it refers a client under an

4    enforceable agreement to pay the referral fee; equitable principles are not given much weight.

5    *Margolin v Shemaria*, 85 Cal. App. 4th 891, 893 (2000).

6         Second, Criden did not refer Isaac Industries to plaintiffs. Criden referred Isaac

7    Industries to Lieff Cabraser, and Lieff Cabraser agreed to and did pay a handsome referral fee to

8    Criden.   "Criden & Love has been paid by Lieff Cabraser and Berger and Montague under their

9    respective referral agreements in the TIO2 Action." (Bunzel Decl. Exh. V, p. 5.)

10        Third, plaintiffs appeared in the TiO2 Action for Breen, a client not referred by

11   Criden.  As Mr. Criden testified, in circumstances where a lawyer finds her own client in a plaintiff

12   side antitrust case, no referral fee is due:

13        A.    If she finds a client from another source?
14        Q.    Or on her own.
          A.    Well, there's no -- you don't pay a referral fee to yourself, so —
15        Q.    Correct.
16        A.    —if Grant & Eisenhofer, where [Linda Nussbaum] works now,
                were to find — have their own client, there would be no need
17              for a referral fee, they would proceed on their own behalf.
          Q.    And there would be nothing wrong with that?
18        A.    Of course not.

19   (Bunzel Decl. Exh. C [Criden Depo. 73:16-74:1].)

20        Fourth, slapping an "equitable" label on Criden's claims does not cure their

21   deficiencies, change summary judgment standards or create triable issues of fact where there are

22   none.  Unjust enrichment arises when a party receives something it was not entitled to, at the expense

23   of another.  The "fact that one person benefits another is not, by itself, sufficient to require restitution.

24   The person receiving the benefit is required to make restitution only if the circumstances are such

25   that, as between the two individuals, it is unjust for the person to retain it. (Rest., Restitution, supra,

26   § 1, com. c.)."  *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992).

27        There is no unjust enrichment—and no jury should be asked to consider the claim—

28   where the district court in Maryland awarded attorney's fees to class counsel, including plaintiffs,

-18-

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL WIESE
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   based on the twelve factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.

2   1978).[13]   (Saveri Decl. ¶ 20, Exh. 10.)   Criden does not contend that plaintiffs (or any of the other

3   counsel involved in TiO2) did not deserve their awarded fees.

4          In the absence of a contract claim, Criden urges it is "unfair" for plaintiffs not to pay a

5   referral fee because Criden had a role in in the inception of the TiO2 Action, which occurred when

6   Mr. Saveri was a partner at Lieff Cabraser and prior to the formation of the Joseph Saveri Law Firm.

7   Simply because Criden had some role—it was tangential or insubstantial at best[14]—in the beginning

8   stages of the TiO2 Action, Criden believes it is unfair for it not to receive some compensation for that

9   which occurred later.  This attenuated reasoning ignores actual causation for plaintiffs' fees benefiting

10  the TiO2 class (plaintiffs' hard work), and does not establish unjust enrichment.

11          Unjust enrichment is a "highly restrictive" equitable doctrine. The doctrine arises from

12  principles of restitution. The general rule concerning restitution of payments made by third parties,

13  under an unjust enrichment theory, is described in the *Restatement of the Law Third*, Restitution and

14  Unjust Enrichment § 48 pp. 144-145, as follows:

15          If a third person makes a payment to the defendant to which (as
        between claimant and defendant) the claimant has a better legal or
16          equitable right, the claimant is entitled to restitution from the
        defendant as necessary to prevent unjust enrichment.
17                          *   *   *
        As used in this section, the words "better legal or equitable right"
18          refer to a paramount interest of a kind recognized in law or equity—
        not to the personal merit or desert of the persons involved, or to
19          considerations of fairness independent of preexisting entitlements.
        See Comment *i*.
20

21

22  [13]     "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised;
    (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity
23  costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's
    expectations at the outset of the litigation; (7) the time limitations imposed by the client or
24  circumstances; (8) the amount in controversy and the results obtained; (9) the experience,
    reputation and ability of the attorney; (10) the undesirability of the case within the legal
25  community in which the suit arose; (11) the nature and length of the professional relationship
    between attorney and client; and (12) attorneys' fees awards in similar cases."

26  [14]     The record shows that Linda Nussbaum first brought the case to Lieff Cabraser.  (Affidavit
    Linda Nussbaum filed May 15, 2014, Dkt. 15-2, ¶ 6.)  Criden referred Isaac Industries to
27  Ms. Nussbaum's current firm Grant & Eisenhofer, but it waived any referral fee even though Grant
    & Eisenhofer did in fact appear for Isaac Industries. (Bunzel Decl. Exh. C [Criden Depo. 34:8-
28  35:11].)

-19-

BARTKO ZANKEL BUNZEL

BARTKO ZANKEL BUNZEL MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   In Comment *i,* the Reporters of the Restatement explain:

2       Although the rule of § 48 is stated very broadly, *its scope is much*
3       *narrower* than the language of the provision might suggest to a non-
        lawyer.  *Properly interpreted, the requirement that the claimant*
4       *demonstrate "a better legal or equitable right" to the benefit in*
        *question is actually highly restrictive.* The requirement is satisfied in
5       some instances (as in Illustration 1) by proof of a clear legal
        entitlement. In other cases the claimant's entitlement is drawn from
6       equity jurisprudence. But *the requirement, in either case, is that the*
        *claimant identify a right in the disputed assets that is both*
7       *recognized, and accorded priority over the interest of the defendant,*
        *under the law of the jurisdiction.* Proof merely that the defendant has
8       received a windfall, that the claimant has been ill-treated, and that
        the third party's payment to the defendant (or the defendant's
9       retention of payment as against the claimant) violates rules of good
        faith, basic fairness, or common decency, does not suffice to make
10      out a claim in restitution under § 48 or any other provision of this
        Restatement.  (Emphasis supplied.)

11  Thus, for Criden to recover under an unjust enrichment theory, it needs to show a right that is both

12  recognized and accorded priority over the interest of  plaintiffs in the awarded fees.

13       Criden  has  no  contract  right,  as  demonstrated  above.  Any  equitable  claim  of

14  "unfairness"  cannot  trump  plaintiffs'  fully  adjudicated  and  legal  right  to  plaintiffs'  earned  and

15  awarded fees.  (Saveri Decl. ¶ 20 and Exh. 10.)  There is no authority for the proposition that Criden

16  has  some  sort  of  superior  equitable  right  or  other  vague  concept  so  as  to  reapportion  or  redistribute

17  class action attorney's fees.

18       Restitution  under  an  unjust  enrichment  theory  would  be  appropriate  "when  the

19  defendant has been compensated or reimbursed by a third party for costs or expenditures incurred by

20  the  claimant."  *Restatement Third*, Restitution and Unjust Enrichment, § 48 Comment (e), p. 148.

21  See, *Kossian v. American National Insurance Co.*, 254 Cal. App. 2d 647, 651 (1967).   Criden

22  provided  *no*  costs or services that formed the basis of plaintiffs' fee award—indeed the time and

23  expenses incurred by plaintiffs far outstripped that of Criden.  Instead, *all* of plaintiffs' awarded fees

24  were based on the work of plaintiffs, not Criden.  Criden has no superior right.

25       Criden's  equitable  claim  is  also  untenable  to  the  extent  Criden  is  seeking  to  hold

26  Mr. Saveri liable for an obligation of his former limited liability partnership.  (Counterclaim ¶¶ 16,

27

28

-20-

77-79 and Exh. A thereto).[15]  Since Lieff Cabraser is a limited liability partnership, and Mr. Saveri is a former limited liability partner, Criden's claim that Mr. Saveri fulfill some asserted obligation undertaken by the partnership cannot as a matter of statutory policy be a "superior" or "paramount" right.  California Corporations Code § 16306(c) provides: "a partner in a registered limited liability partnership is not liable . . . for debts, obligations, or liabilities . . . of . . . the partnership."  Similarly, a "disassociated" (former) limited liability partner such as Mr. Saveri is not liable for obligations of the partnership even if incurred prior to withdrawal. *Id*. at § 16703(b).

A claim for a referral fee under an unjust enrichment theory will not be allowed where it would frustrate the law or public policy.  *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1595 (2008); *Tarlesson v. Broadway Foreclosure Investment, LLC*, 184 Cal. App. 4th 931, 938 (2010).  The strong statutory policy insulating limited liability partners from partnership obligations forbids Criden's unfairness claim.

Lastly, plaintiffs do not believe the Court needs to construe California's ethical rules related to division of fees to decide this motion, since there is no express or implied agreement to pay a referral fee and all other legal and equitable bases for Criden's claims fail.[16]  If the Court concludes there are triable issues unless Rule 2-200 is addressed, then:

- Mr. Saveri is a California licensed attorney subject to the California Rules of Professional Conduct (Saveri Decl. ¶ 1), and he is being asked to have his firm split a fee with another lawyer.  Criden acknowledged those rules.  (Bunzel decl. Exh. H.)

- Even though Criden has obtained the consent of Isaac Industries to a division of fees, there is no evidence that plaintiffs' client Breen (for whom plaintiffs appeared in the TiO2 Action) has consented.  (Saveri Decl. ¶ 26.)[17]

---

[15]    Criden admitted at deposition its referral fee agreements contain no express provision for personal liability of law firm partners. (Bunzel Decl. Exh. C [Criden Depo. 59:4-10].)

[16]    Plaintiffs' Complaint, Dkt. 1, ¶¶ 33-34 and Answer to Counterclaim, Dkt. 48, at Affirmative Defense No. 1, assert that the absence of informed written consent by plaintiffs' client in the TiO2 Action (Breen) to a division of fees with Criden would violate Rule 2-200 of the Rules of Professional Conduct of the State Bar of California.

[17]    *See* Saveri Decl. ¶ 26.  Criden has the burden to prove otherwise. *Mathews v. Orion Healthcorp Inc., supra,* at *6 "On an issue where the nonmoving party will bear the burden of

-21-

1        • Any implied agreement inconsistent with Rule 2-200 is unenforceable and void.

2   *See, e.g. Chambers v. Kay*, 29 Cal. 4th 142,150 (2002); *Restatement of the Law Third*, Restitution

3   and Unjust Enrichment § 31, p. 481, Vol. 1 (restitution on an unjust enrichment theory will not be

4   allowed if it "would defeat the policy of the law that makes the agreement unenforceable.")

5        • In *Margolin v. Shemaria*, *supra,* 85 Cal. App. 4th  at 901, the court rejected an

6   equitable estoppel argument by a referring attorney seeking a referral fee absent written client

7   consent: "failure to share his fees under the fee sharing agreement does not constitute his *unjust*

8   *enrichment* sufficient to support application of the doctrine of equitable estoppel, since rule 2–200

9   exists for the benefit of clients."

10       Again, plaintiffs do not invite the Court's application of the Rule 2-200 to the facts

11  here unless the other bases to reject all of Criden's claims including unjust enrichment are found

12  insufficient.

13       D.      No Claim for *Quantum Meruit* Exists

14       Criden at Counterclaim Count IV incorrectly claims entitlement to all benefit plaintiffs

15  obtained following Criden's referral of Isaac Industries to Lieff Cabraser.   (Counterclaim ¶ 74).

16  Unbridled by reason or seriousness, Criden seeks a shocking one-third of plaintiffs' fee, or

17  approximately $3.3 million, all of which was awarded based on the legal work of plaintiffs, not

18  Criden.

19       This claim turns principles of equity on their head.  The  measure of *quantum meruit* is

20  the reasonable value of *Criden's* services rendered.  The reasonable value of services is *not* measured

21  by how the defendant was "benefited."  *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449-50 (1998).

22  "The measure of recovery in *quantum meruit* is the reasonable value of the services rendered,

23  *provided* they were of direct benefit to the defendant."[18]  *Palmer v. Gregg*, 65 Cal. 2d 657, 660

24  (1967); *see also*, *Producers Cotton Oil Co. v. Amstar Corp.*, 197 Cal. App. 3d 638, 659 (1988);

25

26  proof at trial, the moving party can prevail merely by pointing out to the district court that there is
an absence of evidence to support the nonmoving party's case."

27  [18]      "[I]t is one thing to require that the defendant be benefited by services, it is quite another to
*measure* the reasonable value of those *services* by the value by which the defendant was

28  'benefited' as a *result* of them."  *Id.* at 450.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   *Earhart v. William Low Co.*, 25 Cal. 3d 503, 510 (1979) [law implies an obligation to restore  a

2   benefit unfairly retained by the defendant].)  Here, Criden has been fully paid for its services, having

3   received an attorney's fee award of $1,003,680 representing full payment of its attorney's fees

4   incurred, at a 1.2 lodestar premium.

5        There is no authority for the proposition that *quantum meruit* principles are applicable

6   to referral fees.  Criden's *quantum meruit* claim fails because it is wholly speculative and not properly

7   valued.  Summary judgment on Count IV should be granted.

8        E.    The Fraud Claims Fail

9             1.    There Was No Misrepresentation or Concealment

10        Acknowledging the weakness of its contract and equitable claims, Criden lastly

11   repackages them as a hodgepodge of fraud and misrepresentation claims.  In Count V, Criden re-

12   bundles the implied contract claim into a misrepresentation claim that plaintiffs, by the same conduct

13   that assertedly implied a contract to pay a referral fee, fraudulently represented they would pay it.

14   (Counterclaim ¶ 79.)  The concealment claim contained in Count VII is virtually identical except that

15   it alleges plaintiffs concealed they did not intend to pay a referral fee.  (Counterclaim ¶¶ 94 and 95).

16   Criden's claims fare no better in these different guises.

17        The theory of the fraud claims is that if plaintiffs had advised Criden they would not

18   be bound by the Lieff Cabraser/Criden email or separately agree to pay a referral fee in exchange for

19   the referral of Isaac Industries, Criden would have objected to plaintiffs' request to become co-lead

20   class counsel.  (Counterclaim ¶ 81.)  The claims hinge on the theory  that plaintiffs' actions in

21   entering an appearance in the TiO2 Action, not withdrawing from representing Isaac Industries, and

22   seeking to be appointed co-lead class counsel were all intended to 'deceive' Criden into believing

23   plaintiffs agreed to  be bound by a referral agreement.

24        To state a fraud claim based on misrepresentation, the following must be proven:  (a) a

25   misrepresentation; (b) knowledge of falsity (or "scienter"); (c) intent to defraud to induce reliance;

26   (d) justifiable reliance; and (e) resulting damage.  5 Witkin, *Summary of California Law*, Torts § 772,

27   p. 1121 (10th ed. 2005).

28

-23-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Whether styled as misrepresentation or concealment, Counts V and VII fail for the reasons detailed at § IV A, *infra*.  Criden has admitted plaintiffs could not have intended to deceive when they filed the Notice of Appearance for Breen, as this was an open and notorious communication objectively signaling the intent *not* to pay.  It was the antithesis of misrepresentation or concealment.

Criden now claims it did not see or read the ECF filing at the time.  Even if believed— the evidence showed that Criden religiously followed the court filings and billed time for it[19]—this is no excuse.  Maryland District Court Local Rule 1(c) provides: "If a document is filed electronically, the notice of electronic filing constitutes a certificate of service as to all parties to whom electronic notice is sent."  Criden has appeared as counsel  of record in dozens of federal cases (Bunzel Decl. Exh. G) and is—or should be—well aware of its duties to keep abreast of court filings.

### 2. There Was No Duty to Disclose Rule 2-200

Criden's constructive fraud claim is contained in Count VI of the Counterclaim, and asserts a duty on the part of plaintiffs to advise Criden regarding ethical rules on the division of fees. Because the Court can dispose of all of Criden's claims without reference to Rule 2-200 (*see* § IV C, *infra*), Criden can have no conceivable injury related to the Rule and Count VI can be dismissed on that basis alone.[20]

To the extent the Court reaches Rule 2-200 in connection with Count VI on this motion, the claim fails for the additional reason that Criden cannot establish any "confidential or fiduciary duty" on the part of plaintiffs to disclose such information to Criden.  5 Witkin, *supra,* § 793-94, pp. 1148-49.[21]  Because attorneys have fiduciary relationships with their clients, there is—

---

[19]       *See* Bunzel Decl. Exh. O  Since 50% of Criden's income comes from its referral business so one would imagine that its lawyers would pay keen attention to such developments.  (Bunzel Decl. Exh. C [Criden Depo. 12:10-16].)

[20]       The elements of a constructive fraud cause of action are "(1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive, and (4) reliance and resulting injury (causation)"].)  *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014), citing *Younan v. Equifax Inc*., 111 Cal. App. 3d 498, 516, fn. 14 (1980).

[21]       "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983).

-24-

1    in order  to protect the undivided loyalty attorneys owe to clients—a "bright-line rule" that co-counsel

2    are *not* each other's fiduciaries.  *Beck v. Wecht*, 28 Cal. 4th 289, 298 (2002).

3          Moreover, a party cannot be liable for concealing from another information the latter

4    is charged with knowing.  Criden agreed in court filings to be familiar with California's Rules of

5    Professional Conduct. (Bunzel Decl. Exhs. B [Love Depo. 24:14-25:18; 26:14-24] G and H.)

6          For these reasons, Criden's fraud claims fail, and summary judgment should be

7    granted on Counts IV, V and VI.

8    V.    **CONCLUSION**

9          For the above reasons, the Court should grant summary judgment for plaintiffs on

10   Criden's Counterclaim and terminate this action by a judgment for plaintiffs, and award plaintiffs

11   their costs.   Alternatively, the Court should summarily adjudicate and eliminate each and any

12   claim for relief in the Counterclaim that fails under Rule 56.

13   DATED:  January 6, 2014

14

15                              BARTKO, ZANKEL, BUNZEL & MILLER
                                A Professional Law Corporation
16

17                              By:    _____/s/ Robert H. Bunzel_____
                                       Robert H. Bunzel
18                              Attorneys for Plaintiffs and Counterdefendants
                                JOSEPH SAVERI LAW FIRM, INC.
19                              AND JOSEPH R. SAVERI

20

21

22

23

24

25

26

27

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152