Robert H. Bunzel, State Bar No. 99395
*rbunzel@bzbm.com*
Charles G. Miller, State Bar No. 39272
*cmiller@bzbm.com*
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Plaintiffs and Counterdefendants
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI,

Plaintiffs,

v.

MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A., a Florida corporation,

Defendant.

---

MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A., a Florida corporation,

Counterclaimant,

v.

JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI,

Counterdefendants.

---

No. 3:14-cv-1740 EDL

**PLAINTIFFS' AND COUNTERDEFENDANTS' REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION**

Date: February 11, 2015
Time: 9:00 a.m.
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte
Chief Magistrate Judge

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. CRIDEN DOES NOT RAISE A TRIABLE ISSUE ..... 3

A. There Is No Implied Contract ..... 3

1. Plaintiffs' ECF Notice of Appearance for Breen Constitutes Plaintiffs' Manifestation of Objective Intent Not to Agree to Pay Criden a Referral Fee, Regardless of Whether or Not Criden Read the ECF Filing ..... 3

2. Criden's New Contract Term Should Not Be Permitted, and in Any Event Fails Due to Lack of Consideration, Uncertainty, and Illegality ..... 8

B. Plaintiffs Did Not Receive Criden Funds So As to Support a Money Had and Received Claim ..... 12

C. Criden Ignores That Its Unjust Enrichment Claim Must Be Superior to Plaintiffs' Adjudicated Fee Award ..... 12

D. *Quantum Meruit* Is Not Measured by Alleged Benefit Conferred ..... 13

E. There is Objectively No Deception Toward or Duty to Criden to Support Fraud Claims ..... 14

III. CONCLUSION ..... 15

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Beck v. Wecht*,
28 Cal. 4th 289 (2002) .......... 14

*Crockett & Myers v. Napier, Fitzgerald & Kirby*,
664 F.3d 282 (9th Cir. 2011) .......... 14

*Dandino, Inc. v. U.S. Dept. of Transp.*,
729 F.3d 917 (9th Cir. 2013) .......... 4

*Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York*,
129 F.R.D. 462 (W.D.N.Y. 1990), *affirmed* 923 F.2d 843, *certiorari denied* 111 S. Ct. 2238, 500 U.S. 942, 114 L. Ed. 2d 480 .......... 10

*Gutierrez v. Girardi*,
194 Cal. App. 4th 925,937 (2011) .......... 12

*Howard v. Babcock*,
6 Cal. 4th 409 (1993) .......... 12

*Kennedy v. Allied Mutual Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) .......... 9

*Ladas v. California State Auto. Assn.*,
19 Cal. App. 4th 761 (1993) .......... 10

*Pagdilao v. Maui Intercontinental Hotel*,
703 F. Supp. 863 (D. Haw. 1988) .......... 3

*Weddington Productions v. Flick*,
60 Cal. App. 4th 793 (1998) .......... 10

### Statutes

Code of Civil Procedure

§ 1550 .......... 11

§ 1605 .......... 10

Federal Rules of Civil Procedure

Rule 11. .... 10

Rule 23 .... 2, 11

Rule 23(g) .... 7, 11

**Other Authorities**

1 Witkin, *Contracts* (10th Ed. 2005) .... 7

§ 193 .... 7

§ 203 .... 11

4 Witkin, *Pleadings* (5th Ed. 2012)

§ 557 .... 12

Maryland District Court Rule 1(c) .... 4

Rules of Professional Conduct

Rule 2-200 .... 13

Rule 4-1.5 (g) .... 14

Rule 5-100(A) .... 11

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

I. **INTRODUCTION**

The summary judgment motion of plaintiffs Joseph Saveri Law Firm, Inc. and Joseph R. Saveri ("plaintiffs") showed plaintiffs had no intent to be bound by an agreement to pay Criden & Love ("Criden") a referral fee for referring Isaac Industries to plaintiffs. Criden admitted as much when its principals each testified to the significance of plaintiffs' Notice of Appearance on behalf of Breen, another client in the Titanium Dioxide Antitrust Litigation (the "TiO2 Action"). In particular, each admitted that when plaintiffs filed a Notice of Appearance in the Court docket, this act objectively manifested plaintiffs' intent not to enter into the referral agreement. In fact, Criden did not refer Isaac Industries to plaintiffs.

Criden seeks to save its claim with two meritless arguments raised for the first time in its opposition papers. First, Criden now asserts a jury may nonetheless be permitted to infer that plaintiffs assented to pay Criden a referral fee because Criden failed to read the Notice of Appearance, despite the undisputed facts that plaintiffs duly filed the Notice in the court's ECF system and Criden received it. Even if this incredible assertion were true, this says nothing about the objective significance of the Notice of Appearance, which Criden is forced to concede.

Second, faced with the failure of its contract claim, Criden now invents a new one, contrived to create an issue of fact based on the record in the case. Criden claims that Criden and plaintiffs agreed that, if plaintiffs moved for and were appointed co-lead counsel in the TiO2 Action, plaintiffs would owe Criden a 12.5% "referral fee." This claim fares no better than the prior claim. Indeed, it fares worse because the evidence does not show such an agreement was made. The contract also fails under hornbook contract law.

At deposition, Criden's representative Mr. Love was asked to identify the terms of the alleged referral agreement. Under oath, he did not state that either a motion by plaintiffs for a leadership position or the granting of such a motion by the court overseeing the TiO2 Action was a condition mentioned by Mr. Love to bind plaintiffs. In fact, as he testified, the discussion involved whether or not plaintiffs would agree to pay Criden a referral fee, as Lieff Cabraser had agreed before, regarding Isaac Industries. Indeed, the Lieff Cabraser and Berger Montague referral

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

agreements (Saveri Decl. Exh. 1; Bunzel Decl. Exh. J),[1] on which the implied contract claim in this case is based, each contain *no* term about lead counsel positions. To the contrary, each conditioned the obligation to pay Criden a referral fee upon entering the case for a Criden client, here Isaac Industries. The shift in the alleged implied contract's 'terms' — to focus on plaintiffs' leadership position in the case rather than on referral of Isaac Industries — exposes the "leadership" agreement's unenforceability due to uncertainty, failure of consideration and illegality. It also undercuts the basis of the "referral" agreement claim in the first place.

The record is undisputed that plaintiffs appeared for a non-Criden client, after the Joseph Saveri Law Firm was formed. Plaintiffs didn't need anything from Criden to move for co-lead counsel. They had their own client, having appeared for Breen. Plaintiffs needed the court to grant the motion, based on applicable Rule 23 criteria, not anything having to do with Criden or Isaac Industries. Indeed, the idea that Criden could control or serve as a gatekeeper over the appointment of co-lead counsel if plaintiffs did not agree to pay Criden a fee by virtue of the new alleged implied "leadership" contract term would usurp the court's power under Rule 23 and would illegally restrict plaintiffs' ability to practice law for the benefit of the class. Significantly, there is no question of fact that plaintiffs agreed to such a term. They did not.

The effort by Criden at this late date to invent a contract term that matches what plaintiffs actually did — continuing to serve as co-lead counsel and eventually receiving court appointment to that position — is farfetched and improper. Criden could no more have told Mr. Saveri in May 2012 that if plaintiffs worked more than X hours on the case, or took a greater number of depositions, or used more associates, etc., that such conduct if it occurred would imply 'assent' to pay Criden a "referral" fee. The only consideration under Criden's control was the consent of *its* client (Isaac Industries) to be represented by plaintiffs — hence a "referral" fee — and instead plaintiffs deliberately appeared for a non-Criden client. All objective evidence is that plaintiffs never intended — or agreed — to pay that referral fee.

---

[1] Dkts. 59 and 58, filed January 6, 2015.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

The record clarifies the reason for Criden's abandonment of its prior claim and its substitution of a new one. Criden testified under oath that plaintiffs' 2012 Notice of Appearance for Breen (Saveri Decl. Exh. 4) manifested an intent on the part of plaintiffs *not* to pay Criden a referral. This admission by itself is fatal to Criden's contract claim. Criden cannot now refute that testimony, which remains dispositive. Litigation is not a multiple choice game permitting a switch in theoretical facts when the evidence forecloses a party's earlier factual position. That Criden claims not to have seen the Notice of Appearance for Breen until 2014, while fanciful and at odds with constructive notice under the rules, is only arguably relevant to Criden's *subjective* beliefs. It says nothing about the parties' objective intent. As Criden cannot dispute, plaintiffs filed the Notice and served it on Criden pursuant to the court's ECF system. The filing, therefore, is presumed to have been concurrently received. Objectively, as confirmed by sworn testimony of Criden and others, plaintiffs' Notice of Appearance for Breen utterly negates any implied intent to enter into or be bound, the core element required to establish an implied contract.

Because the contract claim — in its first or last iteration — fails as a matter of law, Criden's other claims fail, too. In particular, Criden makes no effort to address the requirements of the Restatement that unjust enrichment must be based on a "better legal or equitable right." Here, as previously shown, Criden had no such better right. Summary judgment is required.

## II. CRIDEN DOES NOT RAISE A TRIABLE ISSUE

### A. <u>There Is No Implied Contract</u>

#### 1. Plaintiffs' ECF Notice of Appearance for Breen Constitutes Plaintiffs' Manifestation of Objective Intent Not to Agree to Pay Criden a Referral Fee, Regardless of Whether or Not Criden Read the ECF Filing

As shown in plaintiffs' Opening Brief, Dkt. 57, summary judgment is proper when there are no issues of fact as to the material terms of an implied contract. *Pagdilao v. Maui Intercontinental Hotel*, 703 F. Supp. 863, 869 (D. Haw. 1988). Plaintiffs' appearance on behalf of Breen is fatal to Criden's claim. In its Opposition, Dkt. 60, Criden manufactures a new implied contract out of whole cloth to avoid its prior admission that the Notice of Appearance for Breen was an objective manifestation of plaintiffs' rejection of Criden's offer. Criden attempts to

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

contrive issues of fact as to the existence of a different implied contract, seeking to distance itself from its implied contract claim and plaintiffs' Notice of Appearance for Breen, which defeats it. (Opp. 15:8-17:21.)

As Criden admitted at the depositions, and concedes in its papers, the filing of the Notice of Appearance manifested plaintiffs' intent not to be bound by the implied contract to pay a referral fee. This defeats the implied contract claim. Criden seeks to avoid this in two ways. Neither is well-taken. First, Criden disclaims knowledge of plaintiffs' filing of the Notice of Appearance for Breen until sometime in 2014, during a telephone conversation with Mr. Saveri. Criden does not — and cannot — dispute that plaintiffs filed and served the Notice of Appearance through the court's ECF system on June 1, 2012. Criden is therefore deemed to have received that Notice on that date. Maryland District Court Rule 1(c); *see also Dandino, Inc. v. U.S. Dept. of Transp.*, 729 F.3d 917 (9th Cir. 2013) (discussing the common law "Mailbox Rule" that a document properly served is presumed received.) Criden does not dispute it received the Notice. Instead, Criden complains plaintiffs did not email or mail the notice *directly* to Criden. This dispute is nonsensical. Whether or not plaintiffs attached their Notice of Appearance for Breen to another email to Criden or put it in the mail is irrelevant. It is undisputed that the Notice was emailed to Criden by operation of the court's ECF system. Criden is charged with notice of such filing. It is Criden's responsibility to stay abreast of actions that it is involved in. Criden's attempts to characterize the Local Rule as *nothing more than a proof of service* rule is puzzling. It *is a proof of service* on Criden. Its effect is that the party properly served is deemed to have received notice on the service date. Plaintiffs' only obligation was to serve such Notice in accordance with the law and applicable rules. Criden is thus charged with knowledge of plaintiffs' intent not to enter into a referral contract as of June 1, 2012, before the occurrence of any of the conduct Criden claims constitutes an acceptance of Criden's offer.

Second, Criden's own state of mind, understanding, or wishful thinking is irrelevant. (Opp. 12-13.) Under hornbook contract law, the question is the objective manifestation of *plaintiffs'* intent to contract with and to pay Criden a referral fee. Criden suggests that its inferences or beliefs as the "other party" are germane. (*Id.* at 12:17-18, 24-25.) Criden confuses

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

the standard of objective intent with subjective standards, even though it concedes the law requires objective manifestation of intent (*id*. at 12:19-21) and that the belief of a party seeking to imply a contract must be "reasonably" based. (*Id*. at 12:24-25.)

Plaintiffs' appearance on behalf of Breen manifests an intent not to enter into the referral contract. Criden admitted the same at deposition. Therefore, any asserted belief by Criden — even if credible, and it is not — through January 2014 that plaintiffs would pay a referral fee was *un*reasonable, peculiar only to someone not reading the case filings. Criden cannot manufacture a triable issue by claiming now that it stuck its head in the sand. By objective standards, there is no intent to contract. As Criden itself testified, there isn't "any other explanation" as to the import of the Notice. (Bunzel Decl. Exh. B [Love Depo. 94:15-21].)

Criden also quarrels that the Notice of Appearance was ambiguous because it did not specifically reject Criden's offer, include a withdrawal of representation of Isaac Industries, or lead Criden to otherwise conclude that plaintiffs were rejecting its offer. Criden cannot create triable issues with these new assertions. Criden admitted that the Notice manifested plaintiffs' intent not to pay a referral fee. (Bunzel Decl. Exh. B [Love Depo. 94:15-21, 61:23-62:11]; Bunzel Decl. Exh. C [Criden Depo. 55:7-22].) Criden seeks to trivialize the Notice of Appearance, claiming that Mr. Saveri admitted the Notice "could be reasonably interpreted as simply a procedural belt-and-suspenders maneuver to increase the chances of convincing Lieff Cabraser, Gold Bennett and the Court that he deserved to be appointed Co-Lead Counsel." (Opp. 17:10-13.) Criden is mischaracterizing the record. Mr. Saveri said no such thing. The cited deposition testimony (Supp. Love Decl. Dkt. 62, Exh. B [Saveri Depo. 180:14-181:9]) does not support Criden's statement. Counsel for Criden asked Mr. Saveri whether the representation of Breen related to plaintiffs continuing as co-lead counsel. Mr. Saveri testified that it was important for the firm to represent a client, like Breen, to remain co-lead counsel. (*Id*. at 181:5-9.) Indeed, Criden omits the fact that, when earlier asked whether he affirmatively told Criden that he had no intention of paying the referral fee, Mr. Saveri testified that the Notice of Appearance for Breen "was a clear and manifest intention not to pay a referral fee." (Supp. Love Decl. Exh. B [Saveri Depo. 179:19-21].) When measured against the strong and unambiguous testimony from Criden

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

about what the Breen Notice meant, and Mr. Saveri's testimony consistent with that, there is no triable issue that the Notice was trivial or, in Criden's words, a "belt and suspenders" filing.

Criden makes four additional points. None are sufficient to create an issue of material fact. (Opp. 18:11-20:5.)

1. Non-withdrawal for Isaac Industries. Criden claims that, because Mr. Saveri never withdrew from representing Isaac Industries and filed a motion for co-lead counsel status without withdrawing from representing Isaac Industries, plaintiffs accepted the implied contract. Criden overlooks that, by its own admission, the contract to pay a referral fee required plaintiffs to *enter* an appearance for Isaac Industries (namely, to refer Isaac Industries to plaintiffs). (Bunzel Decl. Exh. B [Love Depo. 188:15-20; Love Decl. Dkt. 15-3, ¶ 35].) That did not take place. Plaintiffs *entered* an appearance for Breen. It was not necessary for Mr. Saveri to file a withdrawal from representing Isaac Industries because he was not withdrawing from the TiO2 Action. It is undisputed that its prior firms, Criden and Lieff Cabraser, continued to represent Isaac Industries. (Saveri Decl. ¶ 12.) Moreover, upon opening the Joseph Saveri Law Firm, neither Mr. Saveri nor the firm could represent Isaac Industries directly without entering an appearance for Isaac Industries, as confirmed in the May 2012 communication between Mr. Love and Mr. Saveri cited above.[2] Plaintiffs never did so.

2. Plaintiffs' motion to amend the CMO did not mention representation of Breen. When the plaintiffs moved to amend the CMO to appoint plaintiffs as co-lead counsel under Rule 23(g), they did not specify that any particular firm represented any of the three named plaintiffs. Criden claims this manifests intent to be bound by a referral contract. This is incorrect. There was no need to specifically mention the Notice of Appearance for Breen, since plaintiffs had

[2] Criden at Opp. 6:7-8 and Supp. Love Decl. Exh. A, Avan Decl. ¶¶ 5-6 faults Mr. Saveri for not communicating with Isaac Industries that Mr. Saveri, having left Lieff Cabraser, no longer was representing Isaac Industries in an individual named plaintiff capacity as opposed to as a member of the class. Significantly, at no time, was Isaac Industries without representation. Mr. Avan never claims that he thought plaintiffs were individually representing Isaac Industries, as such is inconsistent with the facts. (Saveri Decl. ¶¶ 14-16, Exhs. 7 and 8; Bunzel Decl. Exh. C [Criden Depo. 57:2-23].) Indeed, Mr. Criden testified that he would expect all client communications to Isaac Industries to come through the Criden & Love firm. (*Id.*) There is no objective manifestation of plaintiffs' individual representation of Isaac Industries as a named plaintiff after Mr. Saveri left Lieff Cabraser.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

previously filed a Notice of Appearance for Breen. Once the Joseph Saveri Law Firm had been established and it appeared for Breen, it was unreasonable for anyone to think that it represented Isaac Industries in a direct capacity without entering a Notice of Appearance for it.

3. All counsel had consented to plaintiffs as co-lead counsel. This effort to manufacture an issue of fact by reading between the lines of the motion to amend the CMO is not well-taken. The document is silent on this issue. It references no plaintiffs by name. Criden predicates this argument on a nonexistent term of the agreement — that Criden's support for co-lead counsel was part of a bargain with plaintiffs. This document provides no support for this claim, because the motion does not refer to or make mention of Criden's support. There is also no factual support for Criden's statement that it had made "crystal clear to Saveri that it would not support his Lead Counsel Motion unless he agreed to pay them a referral fee." (Opp. 19:7-9.) At deposition, Criden never mentioned this as a term of the alleged implied contract. Even Mr. Love's declaration setting out the new terms fails to mention Criden's support as one of the terms. (Love Decl. ¶ 16.) Moreover, the argument that Criden could or would have successfully objected to plaintiffs' leadership role in the TiO2 Action is entirely speculative.[3] The truth is that the support of the other lead counsel — Gold Bennett and Lieff Cabraser — was required, and Criden's acquiescence was of no moment.

4. Plaintiffs' post-Breen appearance conduct. Criden then points to the fact that plaintiffs did not respond to Criden's post-hoc attempts to manufacture evidence of an agreement. This is inconsistent with basic contract law. 1 Witkin, *Contracts* § 193, p. 226 (10th Ed. 2005) (silence is not a communicated acceptance). It is also inconsistent with the reasonable

---

[3] Mr. Love testified:
Q: Okay, and in your suit here, do you contend that if Mr. Saveri had been noisier about his objection to paying your referral fee, that you would have raised it with the trial court?
MR. MASE: Objection, form.
THE WITNESS [Mr. Love]: Obviously, I can't tell you what I would have done, but I can say that, yes, I think if he raised it, we would have done something. We certainly would have raised the issue with, you know, the other lead counsel about it and that we weren't happy with it and taken it from there.
BY MR. BUNZEL:
Q. And you don't know what would have happened if you had done that?
A. Can anybody? (Bunzel Decl. Exh. B [Love Depo. 220:25-221:15].)

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

and objective significance of the absence of a consent or acknowledgement of agreement: it manifested a refusal to agree. Plaintiffs' purported failures to tell Criden that it was not going to pay a referral fee are not *conduct* affirming the existence of a contract. They are the opposite. This is especially true in light of the fact that the Notice of Appearance for Breen manifested plaintiffs' intent not to pay the referral fee, and was a rejection of the May 2012 offer. Criden also mentions the "reminder" e-mails it sent, hoping that Saveri would respond so that, apparently, Criden could claim after the fact there was an agreement. As indicated in the Opening Brief, Criden sent emails early in a case to "confirm" whether there was an agreement as opposed to reminding the recipient of an obligation to pay. The first email mentioned by Mr. Love was the August 8, 2012 email, sent after the Breen Notice of Appearance was filed, where Mr. Saveri was asked to "confirm" the purported referral agreement. This was not a reminder but an offer seeking confirmation. (Saveri Decl. ¶ 23, Exh. 11.) The second email, sent in October 2013, "reminded" Mr. Saveri of a nonexistent obligation to pay a referral fee, so there was no need to respond. (Saveri Decl. ¶ 24, Exh. 12.)

2. Criden's New Contract Term Should Not Be Permitted, and in Any Event Fails Due to Lack of Consideration, Uncertainty, and Illegality

Faced with the failure of its implied contract claim, Criden now claims that plaintiffs owe Criden a referral fee because plaintiffs moved to be appointed co-lead counsel. This both fails and demonstrates the lack of merit of Criden's prior iterations of a contract claim.

Prior to the Opposition to this motion, Criden's implied contract claim was based on a telephone conversation between Mr. Saveri and Mr. Love in May 2012 when Mr. Saveri advised Mr. Love he was leaving Lieff Cabraser. (Counterclaim ¶ 43, Dkt. 44.) According to the Counterclaim, Mr. Saveri asked for permission "to *appear* on behalf of Criden & Love clients in certain ongoing matters, including the TiO2 action." (Counterclaim ¶ 43:8-9; *emphasis added*.) Criden then asserted he offered as follows: it is "agreed so long as Saveri paid the same referral fee agreed to by Lieff Cabraser in each action." (Counterclaim ¶ 43:9-11.) Mr. Love's Declaration in Support of Criden's Motion to Dismiss is consistent:

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> In May 2012, Saveri called me to tell me that he was leaving Lieff Cabraser to start his own law firm, and wanted to know whether Saveri, at his new law firm, could continue to represent Isaac Industries in the TIO2 litigation, and another C&L client in a different litigation. I responded that that C&L was fine with him making his *appearances* so long as his new firm paid C&L the same referral fee that Lieff Cabraser agreed to in those cases.... (Dkt. 15-3, ¶35; *emphasis added*.)

Likewise, Mr. Love, at his deposition November 20, 2014, testified (Bunzel Decl. Exh. B [Love Depo. 188:15-20: "And then he said that he would want to enter appearances on behalf of, you know, clients that I'd given Lieff, and I said sure. And I said, you know, that we would expect you to respect the referral obligation that Lieff had agreed to and, you know, he said he understood, or sure, or something like that."].) When asked if he could remember anything more about the conversation, Mr. Love said no. [Bunzel Decl. Exh. B [Love Depo. 189:23-25: "Q: Is there anything else that was said in the conversation that you recall? A: No."].)

Now, after reviewing the motion for summary judgment, Criden asserts a new implied contract — apparently intended to create a dispute of fact. In his current declaration, Mr. Love attempts to add new terms to the implied contract concerning the filing of a motion for co-lead counsel:

> 15. Saveri told me that he was leaving Lieff Cabraser to start a new law firm and that he intended to file a motion to appoint himself as a third lead counsel in the TIO2 Action representing Isaac industries.
>
> 16. I then told Saveri that if he moved to become the third lead counsel while representing Isaac Industries, C&L would expect Saveri to pay C&L a 12.5% referral fee. (Love Decl. ¶¶15, 16.)

As a matter of law applicable to summary judgment motions, it is settled that a party is not permitted to contradict earlier deposition testimony by way of a declaration or affidavit in order to defeat summary judgment. As held in *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991), an affidavit created to avoid summary judgment will be disregarded as a sham unless it is shown that the affidavit was "a result of an honest discrepancy, a mistake, or the result of newly discovered evidence." Here, none of those exceptions applies. Until now, Criden never mentioned the motion to become co-lead counsel as a basis for the implied agreement. In fact, he was clear at his deposition regarding this conversation and testified that this was not said. (Bunzel

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Decl. Exh. B [Love Depo. 189:23-25], *supra*.) The contention is also wholly inconsistent with the record. Criden's agreement with Lieff Cabraser was a referral agreement: to refer Isaac Industries in exchange for a 12.5% referral agreement. Criden's agreement with Berger Montague was a referral agreement, with essentially the same terms. On the other hand, becoming co-lead counsel is not a term found in Criden's standard referral agreement. (Saveri Decl. Exh. 1; Bunzel Decl. Exh. J.) While Criden has earlier argued that moving for co-lead status was a fact that bore on the equities of this case, on the eve of dismissal it now advances a new declaration asserting a new factual allegation as to the implied agreement's terms.[4]

Criden's invented contract term also would fail as uncertain: an offer cannot be accepted so as to form a contract unless its terms are reasonably certain. *Weddington Productions v. Flick*, 60 Cal. App. 4th 793, 811 (1998). Did plaintiffs agree to pay a referral fee if they simply appeared in the action for Isaac Industries? Or was it also necessary for them to move for co-lead counsel status while appearing for Isaac Industries? Is the referral fee to be paid simply as a result of plaintiffs' continued participation in the case? What would happen if the court did not grant the motion? Is the referral fee to be paid based on the receipt of fees? It is totally uncertain what conduct of plaintiffs was required to manifest to accept this new implied contract. As noted in the Restatement (Second) of Contracts § 33 (1) (1981):

> Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

*See also*, *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761 (1993) (purported promise to consider parity with other insurers in the setting of compensation too vague to be enforced.)

Independently, Criden's invented contract term would fail for lack of consideration. Civil Code §1605 defines "consideration" as:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person,

---

4 Filing sham declarations can also be grounds for Rule 11 sanctions. Attorneys who present sham affidavits or declarations can be sanctioned under Rule 11, F.R.C.P. *See*, *Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York*, 129 F.R.D. 462 (W.D.N.Y. 1990), *affirmed* 923 F.2d 843, *certiorari denied* 111 S. Ct. 2238, 500 U.S. 942, 114 L. Ed. 2d 480.

> other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Declaring to someone that, if they do a particular act, they will owe money is not enough to create a binding contract. Consideration needs to be given to support that promise. Civ. Code § 1550. Such benefit or detriment must be given as an "inducement," such that it is deemed a bargained for exchange. 1 Witkin, *Contracts* § 203, *supra,* p. 238. Criden claims that Mr. Love told Mr. Saveri that if he moved to become the third co-lead counsel, he would be expected to pay a referral fee to Criden. (Love Decl. ¶ 16.)

But simply moving for a leadership position can in no way impose an obligation on plaintiffs to pay a referral fee since there is no bargained-for consideration for a promise to pay. Criden did not refer Isaac Industries to plaintiffs. Plaintiffs did not need to appear on behalf of Isaac Industries — indeed, plaintiffs appeared on behalf of Breen — to move to or be appointed by the court as co-lead counsel. No benefit has been conferred on plaintiffs *by Criden* when class counsel moved to amend the CMO to add plaintiffs as co-lead counsel. Further, Criden did not undertake any burden that would support a promise on the part of plaintiffs. Appointment as lead counsel is out of Criden's control, something only the court could grant under the standards of Federal Rules of Civil Procedure Rule 23.[5]

The "new" term also would constitute an illegal restriction on plaintiffs' ability to practice law. Under Rule 5-100(A) of the Rules of Professional Conduct of the State Bar of California:

> A member shall not be a party to or participate in offering or making an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to practice law, except that this rule shall not prohibit such an agreement which [exceptions are inapplicable].

The agreement Criden now contrived would require plaintiffs to pay Criden a fee as a condition to moving for and being appointed co-lead class counsel. This limits and restricts

[5] Under F.R.C.P. Rule 23(g), once a class is certified, the court must appoint class counsel, and consider a number of factors, including past experience in handling class actions, familiarity with the law, and the resources of counsel. None of these have anything to do with Criden or the referral of a client by Criden.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

plaintiffs' ability to further the interests of the class. *See e.g., Howard v. Babcock*, 6 Cal. 4th 409 (1993), which remanded to the trial court the issue of whether a law firm partnership non-compete agreement was reasonable. The case acknowledged that a rule of reason could be applied between partners. Here, we have a restriction attempted to be imposed by a client, so it is doubtful if any rule of reason would be applied. Even if it were, clearly the imposition of a large referral fee as a condition to becoming co-lead counsel would be deemed unreasonable.

B. Plaintiffs Did Not Receive Criden Funds So As to Support a Money Had and Received Claim

Criden asserted that it can maintain a claim for money had and received for a disputed part of plaintiffs' fee award. Criden misses the point. A claim for money had and received can only be maintained if a party received money *belonging to* the plaintiff. (Opp. p. 20.) Criden cites *Gutierrez v. Girardi*, 194 Cal. App. 4th 925,937 (2011), where a plaintiff could sue for money had and received when the defendant had misappropriated proceeds of a settlement *that belonged* to plaintiff. Criden acknowledges (Opp. 20:19-20) that plaintiffs received an award of *their* earned attorney's fees. Plaintiffs did not receive any money that belonged to Criden.

Moreover, a common count for money had and received requires proof of a specific sum belonging to the claimant and possessed by the other party. 4 Witkin, *Pleadings* § 557, pp. 685-686 (5th Ed. 2012): "[T]he cases make it clear that the only essential allegations are (1) the statement of indebtedness in a certain sum.…" Here, the attorneys' fees were entirely contingent. They were not recoverable until there was a settlement and judgment. They were not recoverable until awarded by the court, and final after exhaustion of appeals. They were not final until allocated by lead counsel. As Criden admits at p. 11 of its Opposition, "It is not unusual at the end of a successful case for firms to try to 'negotiate' the referral fee. (Love Decl. at T 57.)" The common count for money had and received is thus doubly flawed.

C. Criden Ignores That Its Unjust Enrichment Claim Must Be Superior to Plaintiffs' Adjudicated Fee Award

Criden misstates plaintiffs' argument for dismissal of the flawed unjust enrichment claim. Plaintiffs do not argue that Criden cannot advance an unjust enrichment claim and a breach of contract claim together. (Opp. 21:22-27.) However, Criden must show a recognized and

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

superior right, such as a contract right, or some other right that would give it priority over plaintiffs' interest in the fees awarded. (Opening Brief 19-21.) Criden fails to even address this argument which is fatal, and Criden offers nothing (because it cannot) to show it had a superior right to the fees earned and received by plaintiffs.

Criden's other arguments are of no moment. Criden claims that by being appointed third co-lead counsel, plaintiffs decreased sums payable to Lieff Cabraser, therefore diminishing Criden's express referral fee with that firm. (Opp. 22.) This fails for two reasons. First, it is not appropriate for an unjust enrichment claim (properly based on what the other party received and not what a claimant lost). Second, the claim is factually incorrect and entirely speculative. (Supp. Love Decl. Exh. B [Saveri Depo. 218:15-219:22].) There is no showing that the work of plaintiffs diminished Criden's referral fee from Lieff Cabraser. Following Mr. Saveri's departure, Lieff Cabraser continued to work on the case as co-lead counsel. It staffed the case with multiple lawyers and received a substantial fee as a result. Criden has offered no competent evidence that its referral fee from Lieff Cabraser was reduced.[6]

Criden attempts to respond to plaintiffs' argument that unjust enrichment cannot be used if it would violate Rule 2-200 of the Rules of Professional Conduct.[7] Criden misses the point that the Rule is triggered here due to failure to obtain plaintiffs' client Breen's consent. Criden claims that equitable considerations can circumvent application of Rule 2-200. (Opp. 23:17-26.) Criden ignores that it acknowledged in California *pro hac vice* applications that it was familiar with the California Rules of Professional Conduct. (Bunzel Decl. Exhs. B [Love Depo. 24:14-25; 18; 26:14-24] G and H.) It was not necessary or inequitable for plaintiffs to raise the issue with Criden.

D. *Quantum Meruit* Is Not Measured by Alleged Benefit Conferred

Criden has no answer to the fact it was fully compensated for its work.

---

6 Criden also fails to address plaintiffs' argument that unjust enrichment cannot be used if it would run afoul of the protections given to limited liability partners. Presumably, this means Criden is not seeking to hold Mr. Saveri liable for an obligation of his former partnership.

7 As noted in the Opening Brief at 21, the Court need not reach this issue.

Criden relies on a non-California law case, *Crockett & Myers v. Napier, Fitzgerald & Kirby*, 664 F.3d 282 (9th Cir. 2011), which held that a *quantum meruit* award could be based on the value of a client referral to the receiving attorney. The case is distinguishable. First, it construed Nevada law. As cited in the Opening Brief, California law is clear that *quantum meruit* is based on the value of the services rendered, *not* on the value of the benefit to the receiving party. Criden did not refer Isaac Industries. In any event, the *quantum meruit* claim is based on the same "equities" relied upon by Criden to support its other claims. Those "equities" do not trump or defeat plaintiffs' rights in the fees awarded in the absence of an enforceable agreement.

E. <u>There Is Objectively No Deception Toward or Duty to Criden to Support Fraud Claims</u>

The only answer Criden has regarding its fraud claim is to repeat it never read the Notice of Appearance filed on behalf of Breen in the public docket and delivered via email to Criden. This is akin to someone bringing a securities claim and claiming he did not read SEC filings. This is absurd, particularly when claimed by a lawyer. Moreover, this claim says nothing about the fact this filing or the public record demonstrate the absence of any deception. Criden's argument again cannot upset plaintiffs' dispositive showing in the moving papers that they had no intent to deceive Criden. This is shown by the publicly filed Notice of Appearance that Criden acknowledges shows no intent to pay, regardless of whether Criden read it or actually received it.

Criden claims that it was in a confidential and vulnerable relationship with plaintiffs, as an out-of-state attorney unfamiliar with California Rules of Professional Conduct, so as to impose a duty on the part of plaintiffs to advise it of those Rules, relying on a Delaware case. This ignores the bright line test in California that co-counsel are *not* each other's fiduciaries. *Beck v. Wecht*, 28 Cal. 4th 289, 298 (2002). Moreover, Criden acknowledged its familiarity with the California Rules of Professional Conduct in *pro hac vice* filings with California courts. Further, Florida has similar ethical rules regarding fee sharing so that Criden was not someone who would be ignorant of such laws. *See*, Rule 4-1.5 (g) of the Rules of Professional Conduct of the Florida Bar ("Division of

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Fees Between Lawyers in Different Firms.") Mounting a supposed fraud claim on a lawyer's purported ignorance of professional conduct standards is some hutzpah.

## III. CONCLUSION

For the above reasons and those stated in plaintiffs' Opening Brief, the motion for summary judgment and/or adjudication should be granted. Criden nowhere contends that additional discovery or facts are needed to adjudicate this motion, and there are no factual issues for a jury after the party depositions. A decision that Criden's unsupported speculative claims — particularly given their recent metamorphosis — merit a jury trial would send a discomforting message to lawyers that referral fees could be asserted in the absence of a clear agreement. This misguided case, which started by trying to hail plaintiffs into arbitration across the country without a contract, should end with a judgment based on the fact that the absence of a contract is dispositive. Criden, which specializes in referral fees, knew how to document an enforceable right with other law firms and lawyers and did not do so here. It failed to do so with plaintiffs expressly. Its claims for an implied contract fail as well because there never was one, and the words and deeds of plaintiffs, Criden and the other firms that did in fact agree to pay a referral fee demonstrate this. Criden instead asserts an ill-founded *in terrorem*[8] fee claim, based on an email to Mr. Saveri's prior firm and a later conversation with shifting terms and no objective manifestation of assent by plaintiffs. This case should be terminated now.

DATED: January 27, 2015

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

By: /s/ Robert H. Bunzel
Robert H. Bunzel
Attorneys for Plaintiffs and Counterdefendants
JOSEPH SAVERI LAW FIRM, INC.
AND JOSEPH R. SAVERI

8 Criden's "unwritten rule" is that "you don't mess with the referring attorneys," out of "respect." (Bunzel Decl. Exh. C [Criden Depo. 69:14-72:22].)